PEREZ v STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY

Docket No. 67122. Argued April 6, 1983 (Calendar No. 13).—Decided
March 12, 1984.

Herminio Perez, Matilde Perez, and Emilio P. Lopez brought an
action in the Ingham Circuit Court against State Farm Auto-
mobile Insurance Company, seeking no-fault benefits for inju-
ries sustained by Mr. Perez and Mr. Lopez in a motor vehicle
accident in which the truck in which they were traveling,
owned by their employer, International Mini-Plaza, Inc., col-
lided with a tractor-trailer. The employer did not have workers'
compensation insurance coverage. The court, James R. Gid-
dings, J., denied State Farm's motion for summary judgment in
which it had argued that it was entitled to set off workers'
compensation benefits required to be provided by the workers'
compensation act against no-fault personal protection benefits,
whether or not the workers' compensation benefits had been or
ever would be received by the plaintiffs, and granted summary
judgment for the plaintiffs, requiring State Farm to pay all no-
fault benefits due without setoff. The Court of Appeals, D. F.
Walsh and Allen, JJ. (T. M. Burns, P.J., dissenting), reversed
(Docket No. 49723). The plaintiffs appeal.

In opinions by Justice Levin, joined by Chief Justice Williams
and Justice Kavanagh, and by Justice Cavanagh, concurring,
joined by Justice Boyle, the Supreme Court held:

Benefits required to be paid to a worker injured in a motor
vehicle accident as workers' compensation, but which will not
be paid because the employer did not have workers' compensa-
tion coverage, are not required to be subtracted from no-fault
work-loss benefits.

Justice Levin wrote:

---

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 7 Am Jur 2d, Automobile Insurance §§ 361, 368.
Validity and construction of no-fault insurance plans providing for
reduction of benefits otherwise payable by amounts receivable
from independent collateral sources. 10 ALR4th 996.
[3] 7 Am Jur 2d, Automobile Insurance § 23.
Validity and construction of "no-fault" automobile insurance plans.
42 ALR3d 229.

1. No-fault work-loss benefits are intended to provide a worker injured in a motor vehicle accident protection from the economic hardship caused by the loss of income resulting from the accident. Amounts payable as workers' compensation benefits that will not be paid because an employer failed to obtain workers' compensation insurance cannot duplicate no-fault work-loss benefits and are not required to be subtracted from no-fault work-loss benefits. There cannot be a duplicative recovery where only a single recovery is available.

2. The provision of the no-fault act requiring the subtraction of benefits that are "provided or required to be provided" by law from no-fault benefits appears to have been intended to require an injured worker to seek to recover available workers' compensation benefits. It does not mean that sums payable as workers' compensation that are not available to the injured worker because his employer failed to provide workers' compensation coverage are nonetheless to be subtracted from no-fault work-loss benefits. The phrase "required to be provided" means that the injured person is obliged to use reasonable efforts to obtain benefits available from his employer or the employer's workers' compensation insurer.

3. The view that subtraction of unavailable workers' compensation benefits is not permitted under the no-fault act is consistent with the underlying purpose of the no-fault act and with the legislative intent to render both acts complete and self-contained. Neither statutory scheme should be permitted to frustrate the purposes and objectives of the other. The goal of the no-fault act is to provide assured, adequate, and prompt recovery to persons injured in motor vehicle accidents. To require a worker whose employer did not provide workers' compensation coverage to pursue the employer in court for recovery of the workers' compensation benefits is not a remedy adequate to accomplish the purpose of the no-fault act.

Justice Cavanagh, joined by Justice Boyle, concurred for the reasons given by Judge T. M. Burns of the Court of Appeals in his dissent in this case:

The purpose of the setoff provision of the no-fault act is to insure that duplicate benefits are not paid to an accident victim and to coordinate the benefits which the victim actually receives. The purpose would be hindered by requiring the setoff of theoretical workers' compensation benefits to which the victim is entitled, but which are unavailable because of the employer's failure to provide coverage. Such a requirement would impede

the public policy of providing full and adequate compensation for automobile accident victims.

Reversed.

Justice Ryan, joined by Justice Brickley, dissented.

The no-fault act requires subtraction from no-fault benefits otherwise payable to a worker injured in a motor vehicle accident of an amount equal to workers' compensation benefits required to be paid, whether or not the workers' compensation benefits have been or ever will be received by the worker.

1. The no-fault act unambiguously provides that personal protection benefits otherwise payable as a result of injuries sustained in a motor vehicle accident must be reduced by an amount equal to benefits provided or required to be provided by the laws of any state or the federal government. The setoff is to be made whether the benefits are provided or not, so long as they are required to be provided. The plain meaning of the provision does not conflict with any other part of the act; it is specific and controls over the general provision for payment of personal protection benefits.

2. The setoff provision of the no-fault act is an exception to the general purpose of providing recovery of economic loss arising out of motor vehicle accidents. It is intended to eliminate duplication and overlap of benefits available through other insurance programs, cutting the cost of no-fault insurance and ensuring availability of the insurance to the poor and disadvantaged. That goal is neither hindered nor advanced where benefits are not paid. It is advanced where benefits are not paid because other governmental benefits are required to be provided, but are not received. Should no-fault insurers be required to pay benefits otherwise subject to setoff because, as in this case, the employer of the person injured in a motor vehicle accident failed to provide workers' compensation insurance and is itself unable to pay as required by law, no-fault rates would be increased to reflect the increased risk.

105 Mich App 202; 306 NW2d 451 (1981) reversed.

OPINION BY LEVIN, J.

1. INSURANCE — NO-FAULT — WORKERS' COMPENSATION BENEFITS — SETOFF.

*Benefits required to be paid to a worker injured in a motor vehicle accident as workers' compensation, but which will not be paid because the employer did not have workers' compensation coverage, cannot duplicate work-loss benefits required to be paid under the no-fault act and should not be subtracted from*

the no-fault work-loss benefits (MCL 418.315, 500.3109[1]; MSA 17.237[315], 24.13109[1]).

2. INSURANCE — NO-FAULT — WORKERS' COMPENSATION BENEFITS — SETOFF.

A worker injured in a motor vehicle accident is obliged under the no-fault act to use reasonable efforts to obtain workers' compensation benefits which are required to be paid for the injury under the workers' compensation act and such benefits must be set off from no-fault work-loss benefits to which the worker is entitled; however, where workers' compensation benefits are not available because an employer failed to provide coverage, the workers' compensation benefits required to be provided must not be subtracted from the no-fault benefits (MCL 418.315, 500.3109[1]; MSA 17.237[315], 24.13109[1]).

3. INSURANCE — NO-FAULT — WORKERS' COMPENSATION BENEFITS — SETOFF.

The goal of the no-fault act is to provide assured, adequate, and prompt recovery to persons injured in motor vehicle accidents; to require a worker injured in a motor vehicle accident whose employer did not provide workers' compensation coverage to subtract the workers' compensation benefits to which the worker is entitled from the no-fault benefits and then pursue the employer in court for recovery of the workers' compensation benefits is wholly inconsistent with the purpose of the no-fault act (MCL 418.315, 500.3109[1]; MSA 17.237[315], 24.13109[1]).

CONCURRING OPINION BY CAVANAGH, J.

See headnote 1.

DISSENTING OPINION BY RYAN, J.

4. INSURANCE — NO-FAULT — SETOFF.

The no-fault act requires subtraction from no-fault benefits otherwise payable to a worker injured in a motor vehicle accident of an amount equal to workers' compensation benefits required to be paid, whether or not the workers' compensation benefits have been or ever will be received by the worker (MCL 500.3109[1]; MSA 24.13109[1]).

5. INSURANCE — NO-FAULT — SETOFF.

The goal of the no-fault act to provide benefits for persons injured as a result of motor vehicle accidents while minimizing insurance costs is advanced where an amount equal to workers' compensation benefits required to be provided by an employer

*to injured employees is set off against the amount of no-fault benefits payable to the workers, even where no workers' compensation benefits are received by the workers because the employer was not insured and could not itself pay benefits, because, should no-fault insurers be required to pay benefits otherwise subject to setoff in such circumstances, no-fault rates would be increased to reflect the increased risk (MCL 418.315, 500.3109[1]; MSA 17.237[315], 24.13109[1]).*

Abood, Abood & Rheaume, P.C. (by *William E. Rheaume*), for the plaintiffs.

Fraser, Trebilcock, Davis & Foster, P.C. (by *Everett R. Trebilcock* and *Joel E. Dowley*), for the defendant.

LEVIN, J. *(for reversal)*. The question presented is whether amounts required to be paid as workers' compensation that have not been and will not be provided to a worker injured in a motor vehicle accident because the employer did not have workers' compensation coverage are required to be subtracted from work-loss benefits otherwise required to be paid under the no-fault automobile liability act. The Court of Appeals held that the amount so payable but not paid is required to be subtracted from work-loss benefits by § 3109(1) of the no-fault act; one judge dissented. *Perez v State Farm Mutual Automobile Ins Co,* 105 Mich App 202; 306 NW2d 451 (1981). A second panel of the Court of Appeals relied on the dissenting opinion in *Perez* in reaching the opposite conclusion in *Davis v Auto-Owners Ins Co,* 116 Mich App 402; 323 NW2d 418 (1982).

We would hold, in agreement with the result reached by the Court of Appeals in *Davis,*[1] that the

---

[1] State Farm seeks to distinguish *Davis* on the ground that in that case the plaintiff was unrelated to the employer who failed to obtain workers' compensation coverage, while in the present case one of the plaintiffs, Perez, was an incorporator and 50% stockholder of his

amount so payable but not paid is not required to be subtracted from work-loss benefits. Workers' compensation benefits that will not be paid because the employer failed to purchase insurance are not "the kind of governmental benefits the Legislature intended to be subtracted from no-fault benefits". *Jarosz v DAIIE,* 418 Mich 565, 573; 345 NW2d 563 (1984). The "required to be provided" clause of § 3109(1) does not unambiguously alter this conclusion, and was apparently drafted with a different situation in mind. Construing § 3109(1) to mean that it does not require the subtraction of workers' compensation benefits payable but not paid implements the legislative intent underlying the no-fault act and the legislative intent to render the workers' compensation act and the no-fault act complete and self-contained statutory schemes.


                            I


On March 23, 1979, plaintiffs Herminio Perez and Emilio Lopez were injured when the truck in which they were riding collided with a tractor-trailer. They were using the truck in connection with the business of their employer at the time of the accident. Perez was a stockholder of the employer. He and the other stockholder were the only full-time employees. Lopez was a part-time em-

corporate employer. State Farm apparently concedes that *Davis* cannot be distinguished on this ground with respect to the other plaintiff, Lopez, who was an employee, but not a stockholder.

Even with respect to Perez, however, State Farm's attempted distinction is unpersuasive. Perez' status as an incorporator and 50% stockholder of the corporate employer might be significant for purposes of the workers' compensation act. We need not consider this possibility here. For purposes of § 3109(1) of the no-fault act, the only status of Perez that is relevant is his status as a person injured in a motor vehicle accident, the same status possessed by Lopez in the instant case and by the plaintiff in the *Davis* case.

ployee. The employer had not secured workers' compensation insurance.

State Farm Mutual Automobile Insurance Company, the no-fault insurer of the truck, refused to pay no-fault medical and work-loss benefits to Perez and Lopez. State Farm claims that workers' compensation benefits, because they are "required to be provided" under state law, may be subtracted from no-fault benefits although workers' compensation benefits are unavailable to the injured worker because the employer has failed to provide workers' compensation coverage.[2]

## II

Section 3109(1) provides:

"Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury."[3]

The legislative purpose in providing work-loss benefits to an injured person under the no-fault act is to compensate him (and his dependents) by providing protection from the economic hardship caused by the loss of the wage earner's income as a result of an automobile accident. *O'Donnell v State Farm Mutual Automobile Ins Co,* 404 Mich 524, 545-546; 273 NW2d 829 (1979), *app dis* 444 US 803; 100 S Ct 22; 62 L Ed 2d 16 (1979); *Jarosz v DAIIE, supra,* p 575.

---

[2] On cross-motions for summary judgment, the circuit court on January 17, 1980, determined that State Farm was required to pay no-fault benefits without subtraction of the unavailable workers' compensation benefits. A divided Court of Appeals reversed. *Perez v State Farm Mutual Automobile Ins Co, supra.* This Court granted leave to appeal. 414 Mich 864 (1982).

[3] MCL 500.3109(1); MSA 24.13109(1).

Amounts payable as workers' compensation benefits that will not be paid to an injured worker because his employer failed to obtain workers' compensation coverage cannot duplicate no-fault work-loss benefits and are not required to be subtracted from no-fault work-loss benefits.[4] There cannot be a duplicative recovery where only a single recovery is available.[5]

## III

The dissenting opinion would permit the setoff by applying, without construction or interpretation, the "required to be provided" clause of § 3109(1), which it finds to be unambiguous:

"In the context in which it is used in § 3109(1), the language chosen by the Legislature conveys a single and unambiguous meaning; that a setoff *shall* be made either when the workers' compensation benefits are provided or when they are not provided, but are 'required to be provided'.

"Section 3109(1) is not, on its face, ambiguous."[6]

After noting that "[w]here there is no ambiguity [in a statute, courts] are not free to interpret or construe, but are bound to apply the provision as written",[7] the opinion concludes that amounts payable as workers' compensation are "required to be provided", and therefore must be subtracted from a no-fault recovery although they are not actually

---

[4] *O'Donnell v State Farm Mutual Automobile Ins Co, supra,* p 544; *Jarosz v DAIIE, supra,* pp 574-575. But see *Jarosz v DAIIE* (LEVIN, J., dissenting, fn 13).

[5] See *Davis v Auto-Owners Ins Co, supra,* p 414 (quoting *Perez v State Farm Mutual Automobile Ins Co, supra,* p 208 [BURNS, J., dissenting]).

[6] *Post,* p 658. (Emphasis in original.)

[7] *Post,* p 655.

paid because the employer failed to obtain work-
ers' compensation coverage.

## A

To be sure, this Court has said that "[i]f the
language employed in a statute is plain, certain
and unambiguous, a bare reading suffices and no
interpretation is necessary". *Grand Rapids v
Crocker,* 219 Mich 178, 182; 189 NW 221 (1922).[8]
We do not agree, however, that the "required to be
provided" clause of § 3109(1) is so clear and unam-
biguous.[9]

The most unambiguous aspect of § 3109(1) is the
term "benefits". The literal meaning of that term
would require that *all* governmentally mandated
benefits be subtracted from a no-fault recovery.

Despite this unambiguous term, however, this
Court today declares that "[c]ertainly not *all*
'[b]enefits provided or required to be provided un-
der the laws of any state or the federal govern-
ment' must be subtracted from no-fault personal
protection insurance benefits otherwise due". *Jar-
osz v DAIIE, supra,* p 573 (emphasis in original).
The Court sets forth a two-part test for determin-
ing which governmentally mandated payments
within the literal terms of § 3109(1) are "benefits"
required to be subtracted and which government
payments, though also falling within the literal
terms of § 3109(1), are not "benefits" required to be
subtracted from a no-fault recovery. This test is
then applied in such a way as to hold that al-
though the social security retirement payments at

---

[8] See also *MacQueen v City Comm of Port Huron,* 194 Mich 328,
342; 160 NW 627 (1916).

[9] See *Davis v Auto-Owners Ins Co, supra,* p 413; *Ostrowski v Roman
Catholic Archdiocese of Detroit,* 479 F Supp 200, 206 (ED Mich, 1979),
aff'd 653 F2d 229 (CA 6, 1981) (dicta).

issue in *Jarosz* are "benefits provided * * * under the laws of * * * the federal government", they are not "benefits" required by § 3109(1) to be subtracted.

The dissenting opinion does not explain why the "required to be provided" clause of § 3109(1) is so unambiguous as to require mere application, while the term "benefits" is sufficiently ambiguous to require the formal two-part test enunciated in *Jarosz* to properly construe that term. Just as this Court construed the term "benefits" in *Jarosz* and concluded that some government payments but not others are "benefits", so this Court today construes the "required to be provided" clause to determine whether sums payable as workers' compensation that are not paid to an injured worker because his employer failed to obtain workers' compensation coverage may nevertheless be subtracted from no-fault work-loss benefits.

B

Section 3109(1) is based on two model acts: UMVARA[10] and MVBPIA.[11] Both of these model acts provide for the subtraction of benefits and advantages a person "receives or is entitled to receive" because of the injury.[12] The "provided or required to be provided" language of § 3109(1) is functionally equivalent to the "received or is entitled to receive" language of UMVARA and MVBPIA; there is no indication that the Legislature intended any substantive change in the mean-

[10] Uniform Motor Vehicle Accident Reparations Act. See 14 ULA, Civil Procedural and Remedial Laws, p 41.

[11] Motor Vehicle Basic Protection Insurance Act, see Keeton & O'Connell, Basic Protection for the Traffic Victim: A Blueprint for Reforming Automobile Insurance (Boston: Little, Brown & Co, 1965).

[12] UMVARA, 14 ULA, § 11, p 78; MVBPIA, § 1.10, p 306.

ing or content of the provision when it altered the words contained in the two model acts.[13] This language appears to have been addressed to the question whether a person entitled to no-fault benefits may either deliberately or unwittingly forego governmentally mandated payments and nonetheless be entitled to full no-fault benefits. Schermer, *Automobile Liability Insurance* (2d ed), § 8.01, pp 8-3 to 8-4.[14]

Some state statutes provide that only benefits "received" or "recovered" are required to be subtracted.[15] "The implication is, therefore, that an insured may forego taking such benefits without incurring the risk of a deduction." *Id.,* pp 8-4 to 8-5. Other state statutes as well as UMVARA and MVBPIA, on the other hand, permit the subtraction of workers' compensation payments that the insured is "entitled to receive", or that are "payable" or "collectible" by him,[16] "and thus it would appear [they] are deductible upon a showing of availability to the insured". *Id.,* p 8-4.

---

[13] Utah's no-fault statute contains the UMVARA and MVBPIA language. In *Western Casualty & Surety Co v Marchant,* 615 P2d 423, 425 (Utah, 1980), the Supreme Court of Utah, in another context, did not disturb a trial court's finding that where the employer did not carry workers' compensation coverage, the employee was not "entitled to receive" any workers' compensation payments.

[14] The dissenting opinion appears to recognize that the "required to be provided" clause of § 3109(1) was not drafted with the present situation in mind:

"The Legislature's choice of language suggests that it very likely enacted the setoff provisions as though viewing the matter primarily from the perspective of the employer's duty, rather than from the perspective of an employee whose employer violated the law by failing to provide the required governmental benefits. * * * It is likely that the Legislature chose the language it used on the basis of a supposition of employer obedience to the law, not disobedience of it." *Post,* pp 656-657.

[15] See, *e.g.,* Fla Stat Ann, 627.736(4); Kan Stat Ann, 40-3110; Md Ann Code, art 48A, § 540.

[16] See, *e.g.,* Conn Gen Stat, 38-333(c); Minn Stat Ann, 65B.61, subd 2; NJ Stat Ann, 39:6A-6; SC Code Ann, § 56-11-150(d); Utah Code Ann, 31-41-7(3)(a).

By enacting the "required to be provided" language of § 3109(1), the Legislature seems to have aligned the Michigan no-fault act with the latter group of states and with UMVARA and MVBPIA. By declaring that workers' compensation payments "provided or required to be provided" are to be subtracted from a no-fault recovery, the Legislature appears to have set forth a straightforward answer to the question it was addressing: an injured worker *must* pursue available workers' compensation payments because they are deductible simply by virtue of their availability. The "required to be provided" clause does not mean that sums payable as workers' compensation that are not available to the injured worker because his employer failed to provide workers' compensation coverage are nonetheless to be subtracted from no-fault work-loss benefits.[17]

The "required to be provided" clause of § 3109(1) means that the injured person is obliged to use reasonable efforts to obtain payments that are available from a workers' compensation insurer.[18]

---

[17] Several of the cases discussed by the parties in their briefs are not pertinent where workers' compensation payments are unavailable to the injured worker because the employer failed to provide workers' compensation coverage. In *Thacker v DAIIE,* 114 Mich App 374; 319 NW2d 349 (1982), *Moore v Travelers Ins Co,* 475 F Supp 891 (ED Mich, 1979), and *Luth v DAIIE,* 113 Mich App 289; 317 NW2d 867 (1982), workers' compensation payments were available to the injured worker although they were not actually paid to him. In *Thacker* and *Moore,* the injured workers redeemed their workers' compensation claims for less than the total amount of available workers' compensation payments they would otherwise have received; in *Luth,* an injured federal employee elected, pursuant to the federal workers' compensation statute, 5 USC 8118(c), to utilize the sick and vacation days he had accumulated rather than to apply for available federal workers' compensation payments.

[18] This construction of the "required to be provided" clause of § 3109(1) is consistent with a common definition of the word "require". One panel of the Michigan Court of Appeals, in construing § 3109(1), has said that "the plain meaning of 'require' (as shown in *Webster's New World Dictionary)* is 'to ask or insist upon, as by right or authority; demand' ". *Thacker v DAIIE, supra,* p 378.

If workers' compensation payments are available to him, he does not have a choice of seeking workers' compensation or no-fault benefits; the no-fault insurer is entitled to subtract the available workers' compensation payments even if they are not in fact paid because of the failure of the injured person to use reasonable efforts to obtain them.

## IV

The view that § 3109(1) does not permit the subtraction of unavailable workers' compensation benefits is consistent with the underlying purpose of the no-fault act and with the legislative intent to render the workers' compensation act and the no-fault act complete and self-contained statutory schemes.[19]

Consistent with this definition, the "required to be provided" clause of § 3109(1) means that Perez and Lopez must "ask, demand, or call" for any workers' compensation payments that are available to them. If, however, those payments are unavailable to Perez and Lopez because their employer failed to provide workers' compensation coverage, this provision does not mandate that they nonetheless be subtracted from no-fault work-loss benefits.

[19] This view of § 3109(1) is also consistent with this Court's decision in the analogous case of *Mays v Ins Co of North America*, 407 Mich 165; 284 NW2d 256 (1979). That case concerned a similar setoff provision in a private disability insurance contract:

"The Weekly Benefit Amount shall be reduced by the weekly pro-rata portion of any benefits payable under the Workmen's Compensation Act and the primary disability monthly benefit payable under the Federal Social Security Act regardless of actual receipt of such benefit due to the Insured's failure to apply therefor (primary disability monthly benefit means the benefit relating to the Insured only and not including any additional benefit which might be payable because of the presence of dependents)."

After holding that the "regardless of actual receipt of such benefit due to the Insured's failure to apply therefor" clause applied only to social security payments and not to workers' compensation payments, *id.*, p 171, this Court concluded that "[a] setoff of such [workers' compensation] benefits, even if no application was filed, cannot be countenanced under the instant provision, except when such benefits are actually received". *Id.*, p 172.

## A

In *Davey v DAIIE,* 414 Mich 1, 10; 322 NW2d 541 (1982), this Court set forth the legislative purposes underlying both the no-fault act in general and § 3109(1) in particular:

"Enactment of the no-fault act was a major departure from prior methods of obtaining reparation for injuries suffered in motor vehicle accidents. The Legislature modified traditional tort principles of compensation by creating a comprehensive statutory scheme of reparation with the objective of providing assured, adequate and prompt recovery for certain economic losses arising from motor vehicle accidents. *Miller v State Farm Mutual Automobile Ins Co,* 410 Mich 538, 568; 302 NW2d 537 (1981); *Belcher v Aetna Casualty & Surety Co,* 409 Mich 231, 243; 293 NW2d 594 (1980); *Shavers v Attorney General,* 402 Mich 554, 579; 267 NW2d 72 (1978). We have also recognized a complementary legislative objective which is the containment of the premium costs of no-fault insurance. *O'Donnell v State Farm Mutual Automobile Ins Co,* 404 Mich 524, 549, 567; 273 NW2d 829 (1979)."[20]

The view here set forth that § 3109(1) does not

State Farm argues that *Mays* can be distinguished on the basis that the policy in that case provided for the subtraction of "benefits payable" under the workers' compensation act, whereas § 3109(1) mandates the subtraction of "benefits required to be provided" under the workers' compensation act. This distinction is not persuasive, as the two phrases are functionally equivalent. See text accompanying fn 13.

Although we agree with State Farm that the *Mays* holding with respect to a private insurance contract is not controlling or dispositive of the present question arising under the statutory no-fault scheme, we find the *Mays* decision prohibiting a setoff of unavailable workers' compensation payments to be consistent with the views that we express here today.

[20] The virtues of an assured, adequate, and prompt no-fault recovery were extolled by this Court in *Shavers v Attorney General,* 402 Mich 554, 622-623; 267 NW2d 72 (1978):

"Such [no-fault] payments may substantially compensate all personal injury victims of motor vehicle accidents for economic loss, including the victims of motor vehicle accidents, who were, under the tort system, uncompensated or undercompensated for their economic

permit the subtraction of workers' compensation
benefits that are not in fact available to the
worker gives effect to both the general goal of the
no-fault act and the particular purpose of
§ 3109(1).[21] Where workers' compensation benefits
are available, but the injured worker does not
exercise reasonable efforts to obtain them, the
particular purpose of § 3109(1) to contain the cost
of no-fault insurance prevails and the workers'
compensation benefits are required to be sub-
tracted from the no-fault benefits. But where, as
here, the workers' compensation benefits are not
available, the overall objective of the no-fault act
to provide assured, adequate, and prompt recovery
through the no-fault system prevails and no sub-
traction is permitted.[22]

## B

In *Mathis v Interstate Motor Freight System,*
408 Mich 164, 179; 289 NW2d 708 (1980), this
Court noted that "[t]he Worker's Disability Com-
pensation Act (WDCA) and the no-fault insurance

losses. Prompt payment provided for under the act may remedy the
delays under the tort system. By partially abolishing tort liability to
those who suffer personal injuries as a result of motor vehicle acci-
dents, the act may lessen the number of motor vehicle personal injury
tort suits in the courts. The prompt availability of compensation for
economic losses may relieve the undereducated or those with lower
income from the pressure—'legal' or economic—to settle serious
claims prematurely and for less than an equitable amount."

[21] Although the dissenting opinion adverts to the statement in
*Davey* that the cost-reduction goal of § 3109(1) is "complementary" to
the goal of the statute as a whole to provide assured, adequate, and
prompt recovery so that both objectives should be given effect, *post,*
pp 661-663, it would "apply" the "required to be provided" clause of
§ 3109(1) in such a way as to frustrate and defeat the overall objective
underlying the no-fault act. The dissenting opinion would deny Perez
and Lopez an assured, adequate, and prompt recovery for their
economic losses.

[22] See *Davis v Auto-Owners Ins Co, supra,* p 414 (quoting *Perez v
State Farm Mutual Automobile Ins Co, supra,* p 208 [Burns, J.,
*dissenting*]).

act are complete and self-contained legislative schemes addressing discrete problems." Thus neither statutory scheme should be permitted to frustrate the purposes and objectives of the other statutory scheme.[23] Under the view here set forth that § 3109(1) does not permit the subtraction of unavailable workers' compensation payments, the no-fault act would remain a separate and self-contained legislative scheme: the unavailability of workers' compensation payments would not preclude the no-fault scheme from providing the injured person with an assured, adequate, and prompt recovery.

To be sure, the employer is ultimately liable to pay workers' compensation benefits to which an employee is entitled if the employer fails to provide workers' compensation insurance coverage.[24] It is also true that the workers' compensation act increases the opportunity for recovery of a judgment entered against the employer by denying the employer certain exemptions from seizure and sale of property normally allowed, and by subjecting officers and directors of corporate employers to personal liability.[25]

This remedy against the employer, however, does not bar the injured worker from obtaining full no-fault work-loss benefits. The workers' compensation act and the no-fault act are "complete and self-contained legislative schemes", *Mathis,*

---

[23] Under the dissenting opinion's view of § 3109(1), the failure of the workers' compensation act to provide for payments where the employer has failed to procure workers' compensation coverage would effectively frustrate the purpose of the no-fault act—which does provide for payments where the owner or driver is uninsured or unidentified (MCL 500.3177; MSA 24.13177)—to provide assured, adequate and prompt recovery for economic loss arising from motor vehicle accidents.

[24] See MCL 418.647; MSA 17.237(647).

[25] See *id.*

*supra,* p 179, and neither scheme should be permitted to frustrate the purposes and objectives of the other scheme. The remedy afforded by the workers' compensation act to an injured worker whose employer has failed to obtain workers' compensation coverage—a potentially lengthy and costly lawsuit against the employer—is wholly inadequate to accomplish the no-fault act's purpose of providing assured, adequate, and prompt recovery for economic loss arising from motor vehicle accidents. Although the "required to be provided" clause of § 3109(1) calls for reasonable efforts to obtain available workers' compensation payments, it does not, in light of the underlying purpose of the no-fault act, call for a potentially lengthy and costly effort of suing the employer when workers' compensation payments are unavailable because the employer failed to obtain workers' compensation coverage.

## V

In sum, the "required to be provided" clause of § 3109(1) is no more susceptible to simple application than the term "benefits". The "required to be provided" clause of § 3109(1) means only that the injured person is obliged to use reasonable efforts to obtain available workers' compensation payments. The clause does not authorize subtraction of unavailable workers' compensation benefits.

In the instant case, workers' compensation payments are unavailable to Perez and Lopez because their employer has failed to provide workers' compensation coverage. The amount of such workers' compensation payments may not be subtracted from the no-fault work-loss benefits.

The decision of the Court of Appeals is reversed

and the cause is remanded for reinstatement of the trial court's order granting summary judgment in favor of Perez and Lopez and further proceedings consistent with this opinion.

WILLIAMS, C.J., and KAVANAGH, J., concurred with LEVIN, J.

CAVANAGH, J. *(concurring).* For the reasons outlined by Judge T. M. BURNS in his dissent in *Perez v State Farm Mutual Automobile Ins Co,* 105 Mich App 202; 306 NW2d 451 (1981), and followed by the Court of Appeals majority in *Davis v Auto-Owners Ins Co,* 116 Mich App 402; 323 NW2d 418 (1982), I join my brother LEVIN's reversal of the decision of the Court of Appeals and the reinstatement of the trial court's grant of summary judgment in favor of Perez and Lopez.

BOYLE, J., concurred with CAVANAGH, J.

RYAN, J. *(dissenting).* We are asked once again to determine the meaning of a provision of the no-fault insurance act.[1] The provision in question, MCL 500.3109(1); MSA 24.13109(1), states:

"Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury."

The issue is whether workers' compensation benefits which have not been and will not be received by employees injured in a motor vehicle accident because their employer did not have workers' compensation coverage despite the obliga-

---

[1] 1972 PA 294, as amended; MCL 500.3101 *et seq.;* MSA 24.13101 *et seq.*

tion to do so must be set off against no-fault benefits otherwise payable.

We hold that the statute requires the subtraction from no-fault benefits otherwise payable of an amount equal to the workers' compensation benefits which were required by law to have been provided to each plaintiff, despite the fact that the compensation benefits may not be received.

I

On March 23, 1979, Emilio Lopez was a passenger in a truck being driven by Herminio Perez and belonging to International Mini-Plaza, Inc., a Michigan corporation, when the truck collided with a tractor-trailer. Both men were seriously injured. Mr. Perez suffered the amputation of his right arm and severe internal injuries, and Mr. Lopez sustained a fractured pelvis.

At the time of the accident, Mr. Perez and Manuel Garcia were the sole owners of International Mini-Plaza, Inc., and were its only full-time employees. Mr. Lopez was a part-time employee. The corporate employer did not have workers' compensation insurance coverage for any employees as required by MCL 418.115(b); MSA 17.237(115)(b).

The corporation's truck was used solely for corporate business, usually picking up and delivering groceries, and the plaintiffs were injured while the truck was being used for business purposes. State Farm Mutual Automobile Insurance Company was the no-fault insurer of the truck at the time of the accident. When State Farm, relying upon § 3109(1), refused to pay no-fault benefits, including medical and wage-loss benefits, the plaintiffs began this litigation.

On December 14, 1979, State Farm moved in the trial court for summary judgment on the ground that it was entitled to set off, against no-fault personal protection benefits, workers' compensation benefits "required to be provided" under the workers' compensation laws.[2] Plaintiffs also moved for summary judgment. On January 17, 1980, the circuit court granted plaintiffs' motion and denied defendant's, determining that State Farm was obligated to pay no-fault benefits without subtraction of workers' compensation benefits because the latter had not been and would not be received by the plaintiffs.

State Farm appealed, and a divided Court of Appeals panel reversed. 105 Mich App 202; 306 NW2d 451 (1981). The Court found § 3109(1) to be unambiguous and its meaning clear, and thus felt bound to reverse the decision of the trial court and hold that State Farm was entitled to subtract workers' compensation benefits which should have been paid from no-fault benefits otherwise due.

We granted leave to appeal. 414 Mich 864 (1982).

## II

Whether the appellants must suffer the loss of no-fault benefits otherwise payable for their injuries and related losses growing out of this accident depends upon the meaning in § 3109(1) of the language "[b]enefits provided or required to be provided" in the context of the section in which it appears and, of course, in the context of the entire no-fault act.

To repeat, § 3109(1) provides:

"Benefits provided or required to be provided under

---

[2] MCL 418.101 et seq.; MSA 17.237(101) et seq.

the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury."

Appellants argue that the foregoing language is ambiguous and should be *interpreted* or *construed* to mean that the mandated setoff is to occur only when the required workers' compensation benefits are actually received or will be received.

The meaning of the language of the statute is, as always, a matter of legislative intent. The first and, in our state, usually the best source of insight into what the Legislature intended with respect to a particular statutory provision, if indeed it thought about the situation in question at all, is derived by determining the meaning of the words employed in the language used. In determining the meaning, we are duty bound to assign, and to presume that the legislators assigned to the words and expressions used their primary and generally accepted meanings. *Hawley v Snider,* 346 Mich 181; 77 NW2d 754 (1956).

If, in assessing statutory language in that way, we find an ambiguity which renders the precise meaning of the provision in question obscure or uncertain, we are free, indeed required, to *interpret* or *construe* the provision as having a meaning which, while doing no violence to the meaning of the words used, is consonant with the purpose and intent of the Legislature in enacting the legislation as a whole. The polestar of the interpretive process is always, of course, legislative intent—the intention, consistent with the essential purpose of the legislation as a whole, which we think the Legislature would have articulated had it thought about the factual situations in question and expressed itself more plainly and clearly. Ambiguity

which gives rise to the Court's authority to implement or construe the questioned statutory provision may exist for any number of reasons. Usually, however, it exists because the meaning of the specific provision in question is made doubtful or uncertain because the language is vague, equivocal, contradictory, or recondite, because the specific provision in question conflicts with one or more of the other provisions of the statute, or because the provision appears to conflict with the purpose of the statute as a whole.

Where there is no ambiguity, however, we are not free to interpret or construe, but are bound to apply the provision as written.

As this Court stated in *Grand Rapids v Crocker,* 219 Mich 178, 182; 189 NW 221 (1922):

"If the language employed in a statute is plain, certain and unambiguous, a bare reading suffices and no interpretation is necessary."

And, in *MacQueen v City Comm of Port Huron,* 194 Mich 328, 342; 160 NW 627 (1916):

"It is a cardinal rule that the legislature must be held to intend the meaning which it has plainly expressed, and in such cases there is no room for construction, or attempted interpretation to vary such meaning."

Those expressions of the well-settled rule were recently approved and reaffirmed in *Soap & Detergent Ass'n v Natural Resources Comm,* 415 Mich 728, 738; 330 NW2d 346 (1982), where we reiterated that "an unambiguous statute does not need interpretation".

We turn then to the provision in question.

A

Upon its face, § 3109(1) mandates that benefits either "provided or required to be provided" under state or federal law be deducted from personal injury protection benefits payable under a no-fault insurance policy. In this case, since workers' compensation benefits were required to be provided to the plaintiffs under state law, they are of the category of benefits to which the provision has reference. See *Mathis v Interstate Motor Freight System,* 408 Mich 164; 289 NW2d 708 (1980). The critical clause in the provision in question is "[b]enefits provided or required to be provided".

The appellants insist that the language means that there is to be no setoff of workers' compensation benefits against no-fault benefits unless workers' compensation benefits are actually received or will be received and that, since their employer failed to obtain workers' compensation insurance coverage, and is uncollectible, they will never receive such benefits and thus there can be no setoff.

The appellants' theory has much to recommend it as a matter of wise and fair policy. That is not, however, the question. The question is, what did the Legislature intend? What it said is the primary source of enlightenment in determining what it intended, *Owendale-Gagetown School Dist v State Bd of Ed,* 413 Mich 1, 8; 317 NW2d 529 (1982), and ascertaining what it intended is the beginning and end of our inquiry. Clearly, it did not say that workers' compensation benefits are to be subtracted from no-fault benefits *received or to be received,* although it might easily have done so had that been its intention. Rather, it declared that the subtraction was to be of benefits "provided or required to be provided". The Legislature's choice of language suggests that it very

likely enacted the setoff provisions as though view-
ing the matter primarily from the perspective of
the employer's duty, rather than from the perspec-
tive of an employee whose employer violated the
law by failing to provide the required governmen-
tal benefits. And that is understandable, since the
Legislature was concerned with a desire to coordi-
nate benefits which were required to be provided
by two separate statutes. It is likely that the
Legislature chose the language it used on the basis
of a supposition of employer obedience to the law,
not disobedience of it.

Certainly, it is possible, as appellants suggest,
that the Legislature did not anticipate a situation
like the one in which the appellants find them-
selves, and if it had might have made special
provision to assure that benefits would be paid. It
is, of course, pure speculation to assume that no
legislative thought was given to the possibility of
facts such as those at bar. Even if such speculation
be indulged,[3] we are left not with what the Legisla-
ture might have said, but what it did say—and
what it said is clear, plain, and direct: that there
is to be a setoff of benefits "provided or required to
be provided".

[3] Speaking for the Court of Appeals majority in this case, Judge
WALSH declared:

"Had the Legislature foreseen and carefully considered the facts
presented to us in this appeal, it may have provided for a result other
than that mandated by the precise language of the statute. Applica-
tion of the statute here leads to consequences which are tragically
unfortunate for the plaintiffs because their employer failed to provide
required workers' disability benefits. But the constitution gives us no
power to amend legislative enactments. If the statute is unfair, or
unreasonable, or unwise, the remedy lies with the Legislature. We
have no alternative but to apply the statute as the Legislature wrote
it.[1]

"[1] The judicial branch of government is not empowered to nullify a
clear and unambiguous act of the Legislature unless it determines
that the act is unconstitutional. There is no claim that the statutory
enactment at issue in this appeal is unconstitutional."

The statute simply does not say what appellants claim it means. Indeed, what it says is contradictory to what appellants claim for it. To read into the statute the meaning urged by appellants would require us to find ambiguity where none exists and, in effect, to rewrite the clause in question so that it would read: "benefits provided or required to be provided [and which are actually received or will be received]". We are not, of course, free to do so.

In the context in which it is used in § 3109(1), the language chosen by the Legislature conveys a single and unambiguous meaning: that a setoff *shall* be made either when the workers' compensation benefits are provided or when they are not provided, but are "required to be provided".

Section 3109(1) is not, on its face, ambiguous.[4]

### B

Just as we are not persuaded that any reasonable meaning can be assigned to the language of § 3109(1) other than that which plainly emerges from the words used, we are also not persuaded that the plain meaning of the provision conflicts with any other part of the no-fault act to create a contextual ambiguity. No other provision of the act, expressly or by fair implication, contradicts § 3109(1) by requiring no-fault benefits to be paid when governmental benefits are "provided or required to be provided". Although § 3105 of the act imposes a general obligation to pay personal protection insurance benefits, that section, by its terms, specifically subjects the payment of benefits

---

[4] It appears that before the Court of Appeals the appellants also thought the language was unambiguous because Judge Walsh stated that "counsel for plaintiffs-appellees acknowledged that there is no ambiguity in the language used by the Legislature and that the meaning of that language is clear". 105 Mich App 206.

to the other provisions of the act.[5] It is, of course, well settled that as between contemporaneous provisions of a statute, one of which is general and the other special and particular, the latter controls. As we said in another context in *Winter v Royal Oak City Manager,* 317 Mich 259, 265; 26 NW2d 893 (1947):

"The established rule is that contemporaneous statutes should be construed together, and 'where there are two acts or provisions, one of which is special and particular, and certainly includes the matter in question, and the other general, which, if standing alone, would include the same matter and thus conflict with the special act or provision, the special must be taken as intended to constitute an exception to the general act or provision, especially when such general and special acts or provisions are contemporaneous, as the legislature are not to be presumed to have intended a conflict.' *Crane v Reeder,* 22 Mich 322, 334 (1871), and authorities therein cited."

As an aspect of the foregoing argument (conflict between specific provisions within a statute), the appellants assert that even if no ambiguity is found in the language of § 3109(1), facially or contextually, our decision in *Workman v DAIIE,* 404 Mich 477; 274 NW2d 373 (1979), stands for the proposition that the literal language of a statute will not be followed when to do so would lead to an absurd result. According to appellants, a literal application of § 3109(1) in this case would lead to just such a result. We think appellants misperceive our holding in *Workman.*

In that case, we observed that, as between two

---

[5] "Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, *subject to the provisions of this chapter.*" MCL 500.3105(1); MSA 24.13105(1). (Emphasis added.)

sections of the no-fault act, § 3116 and § 3135, it
appears that what is given with one hand is taken
away with the other.

Section 3135 authorized recovery in tort in
specifically delineated circumstances. Section 3116,
on the other hand, mandates a subtraction of the
amount of the tort recovery from personal injury
protection benefits. As to that apparent contradic-
tion, we said in *Workman:*

"[T]he Legislature, on the one hand, provides an
injured person limited tort remedy in § 3135 of the act
while, on the other hand, providing that any tort recov-
ery achieved pursuant to § 3135 will be effectively taken
away under § 3116 of the act.

"This absurdity can be avoided, however, by applying
the rules of statutory construction articulated *supra,
i.e.,* by construing § 3116 in a fashion which both car-
ries out the apparent purpose of the Legislature and
harmonizes this section with § 3135".

We were dealing in *Workman* with an ambigu-
ity created by two apparently conflicting sections
of the no-fault act, each of which was a specific
exception to general provisions of the act provid-
ing for personal injury protection benefits and the
abolition of tort liability. We reconciled the ambi-
guity by application of the familiar rules of con-
struction discussed herein, as a means of preserv-
ing and enforcing the intent of the Legislature.[6]

---

[6] In *Workman,* the language of MCL 500.3116; MSA 24.13116 was
not ambiguous, and it seemed clearly to require the setoff from no-
fault benefits, or reimbursement if benefits had already been paid, of
a recovery for noneconomic injuries or certain excessive economic
injuries under MCL 500.3135; MSA 24.13135. Like § 3109(1), § 3116
was a specific modification of the general obligation of no-fault insur-
ers to pay benefits, MCL 500.3105; MSA 24.13105. Section 3135(2)(b)
was a specific exception to the general abolition of tort liability. Thus,
the conflict, the ambiguity, was between two different exceptions to
general provisions. Application of one section, § 3116, would totally
defeat application of § 3135, and the no-fault scheme did not clearly

We did not, as appellant suggests, simply disregard the plain meaning of a statutory provision in order to "avoid [an] absurd result".

We are not faced here with a situation comparable to that which was presented in *Workman.* Section 3109(1) does not conflict with any other specific provision of the no-fault act. In *Workman,* in order to carry out the intent of the Legislature, we were required to interpret ambiguous provisions of the act in a manner consistent with that intent. While in this case we are likewise bound to carry out legislative intent, we can do so by giving effect to the language of the provision as written without interpretation or construction because here no ambiguity exists, either facially or between § 3109(1) and other provisions of the act.

## C

The appellants also argue that the literal meaning of § 3109(1) is at odds with the overall purpose of the no-fault act.

We disagree.

In *Davey v DAIIE,* 414 Mich 1, 10; 322 NW2d 541 (1982), we said:

"Enactment of the no-fault act was a major departure from prior methods of obtaining reparation for injuries suffered in motor vehicle accidents. The Legislature

harmonize the two. Consequently, we applied rules of construction to avoid an unconstitutional and absurd result.

The case before us differs, however, in that if a conflict exists at all it is between a general obligation to pay benefits (§ 3105) and one specific exception (§ 3109[1]). As noted before, this "conflict" is resolved both by the statutory language making the general obligation subject to statutory exceptions and by our duty to carry out the intent of the Legislature by giving effect, where possible, to all of the provisions of an enactment. There is no constitutional, statutory, or logical obstacle to giving effect to both the general and the specific provisions in this case.

modified traditional tort principles of compensation by creating a comprehensive statutory scheme of reparation with the objective of providing assured, adequate, and prompt recovery for certain economic losses arising from motor vehicle accidents. *Miller v State Farm Mutual Automobile Ins Co,* 410 Mich 538, 568; 302 NW2d 537 (1981); *Belcher v Aetna Casualty & Surety Co,* 409 Mich 231, 243; 293 NW2d 594 (1980); *Shavers v Attorney General,* 402 Mich 554, 579; 267 NW2d 72 (1978). We have also recognized a complementary legislative objective which is the containment of the premium costs of no-fault insurance. *O'Donnell v State Farm Mutual Automobile Ins Co,* 404 Mich 524, 549, 567; 273 NW2d 829 (1979)."

It is the appellants' claim that to the extent that some motor vehicle accident victims do not receive no-fault benefits as a result of § 3109(1), the goal of providing sure and quick recovery has been frustrated and there is a conflict therefore between § 3109(1) and the act as a whole. That argument proceeds, however, from an inappropriately narrow view of the purpose of the no-fault act. It is incorrect to assume that the *only* purpose of the no-fault act is to assure that every auto accident victim is awarded compensatory benefits authorized by the act. While that is indeed one of the primary purposes of the legislation, the act must be viewed as a whole, considering all the pertinent provisions together, to the end that the *general* purpose may be ascertained and carried out, see *Melia v Employment Security Comm,* 346 Mich 544, 562; 78 NW2d 273 (1956), without, however, ignoring particular provisions which the Legislature intended to stand as exceptions to its general purpose in the statute.

Section 3109(1) is an exception to the general scheme of payment of benefits. Any nonpayment of no-fault benefits, whether or not workers' compen-

sation benefits are actually paid, will seemingly frustrate the overall purpose of the statute. But the *overall* purpose is just that, and it must be ascertained in light of every provision in the act, including § 3109(1) and the Legislature's apparent intent as manifested in the plain language used there. Where the Legislature's intent is made clear in an unambiguous statutory exception, the primary purpose of the statutory scheme as a whole may not be used to nullify the effect of the specific exception.

In *O'Donnell v State Farm Mutual Automobile Ins Co,* 404 Mich 524, 544-545; 273 NW2d 829 (1979), we said:

"The history of § 3109(1) indicates that the Legislature's intent was to require a set-off of those government benefits that duplicated the no-fault benefits payable because of the accident and thereby reduce or contain the cost of basic insurance.

"In a letter to the Governor from the Commissioner of Insurance analyzing a series of proposed no-fault bills introduced in 1971, none of which contained a set-off provision, the Commissioner criticized the bills because they tended to 'increase the duplication and overlap between auto insurance and other insurance programs, sick leave programs and social security'. Subsequent bills did contain set-off provisions. The final version of § 3109(1) was similar to an amendment suggested by the Commissioner. According to the Commissioner, the purpose of the amendment was 'to provide a more complete and effective coordination of benefits between Michigan auto insurance and the benefits provided by the laws of all the states and the federal government'. As noted by Justice WILLIAMS in his opinion in this case, the Commissioner's comments 'make clear that the purpose of the § 3109(1) statutory scheme was framed in terms of maintaining or reducing premium costs for all insureds through the elimination of duplicative benefits recovery'."

Section 3109(1) is, in significant part, a cost-cutting measure to ensure the availability of insurance to the poor and disadvantaged. *Id.,* p 547. At most, § 3109(1) was intended to prevent duplication of benefits and reduce costs, *id.,* p 568 (WILLIAMS, J., *dissenting),* yet application of § 3109(1) in this case conflicts with neither purpose. First, the goal of preventing duplication of benefits is neither advanced nor hindered where no benefits—either no-fault or workers' compensation—are paid. Second, the goal of cost reduction is advanced when no-fault benefits are not paid in situations in which governmental benefits are "required to be provided", but are not received. Presumably, if insurers were required to pay no-fault benefits to automobile accident victims-employees whose employers fail to provide workers' compensation insurance, the no-fault rates would be adjusted upward to reflect that increased risk.

Certainly, if it were the intent of the Legislature that the setoff provision of § 3109(1) is to be operable only where there is an actual double recovery, a denial of no-fault benefits in this case would frustrate that purpose. For the reasons discussed, however, we do not think such a purpose is fairly discernible from the language of § 3109(1) taken alone or in context, or from the history of the no-fault act.

Moreover, there is nothing unreasonable in a legislative intention to require a subtraction from no-fault benefits of governmental benefits which are "required to be provided". Such a provision contributes to the goal of minimizing insurance costs. From the perspective of the reasonableness of the legislative purpose, it must be remembered that the employer is ultimately liable to pay workers' compensation benefits to which an employee is

entitled if the employer fails to provide workers' compensation insurance coverage. In the case of a corporate employer, officers and directors are personally liable for benefits not paid from corporate assets. See MCL 418.647; MSA 17.237(647).

Even where, as here, the employer is apparently uncollectible, it cannot be said that the Legislature *intended* to require the no-fault insurer to pay, for at least two reasons. First, it used language in § 3109(1) which is squarely at odds with such an intention. Second, there is reason to believe that when enacting the no-fault act the Legislature was aware of the possibility that an employer would fail to obtain workers' compensation coverage. "[T]he Legislature is presumed to have knowledge of and to act consonantly with existing statutes". *Endykiewicz v State Highway Comm,* 414 Mich 377, 385; 324 NW2d 755 (1982). *Cf. People v Hall,* 391 Mich 175, 195; 215 NW2d 166 (1974). Clearly, the Legislature knew at the time it enacted § 3109(1) that workers' compensation insurance was "required to be provided" by Michigan law and that an employer is liable to pay compensation benefits to which an injured employee is entitled, MCL 418.315; MSA 17.237(315), even if the employer does not have insurance. See MCL 418.647; MSA 17.237(647).[7] Given the fact that the Legislature had earlier specifically considered and addressed the situation in which an employer would not obtain workers' compensation insurance, the argument that the Legislature overlooked such a possibility or actually intended to preclude a no-fault insurer from subtracting workers' compensation benefits that would not be received is unpersuasive.

---

[7] 1972 PA 294 amended and added the pertinent no-fault insurance provisions, to apply starting October 1, 1973. This was three years after MCL 418.647; MSA 17.237(647) was added to the workers' compensation laws by 1969 PA 317, effective December 31, 1969.

There is no reasonable basis to conclude that the Legislature did not intend that the no-fault insurer *shall* set off from the benefits payable those benefits "required to be provided". What indications there are—the plain language of the statute, the failure of the Legislature to provide a different result in light of its knowledge of the possibility of a case such as the one before us, and the reasonableness of requiring a setoff in all cases—suggest that the Legislature intended what it said.

Appellants have failed to show any ambiguity in § 3109(1), or any conflict with other specific provisions of the no-fault act or its overall purpose which would warrant our supplying the interpretative gloss they suggest. We are required to apply the statute as written.

The decision of the Court of Appeals should be affirmed.

BRICKLEY, J., concurred with RYAN, J.