Harry MOORE, Plaintiff,

v.

TRAVELERS INSURANCE
COMPANY, Defendant.

Civ. A. No. 8–70470.

United States District Court,
E. D. Michigan, S. D.

Aug. 3, 1979.

Mike D. Nelson and Arnold M. Fink, Detroit, Mich., for plaintiff.

Barry M. Kelman and Taras P. Jarema, Southfield, Mich., for defendant.

## OPINION

FEIKENS, District Judge.

### Facts

On February 22, 1975, Plaintiff was injured while driving an uninsured automobile owned by his girlfriend. At the time, he was employed as an insurance agent for North Carolina Mutual Insurance Company ("North Carolina"). The parties have stipulated that his injury was suffered in the course of and arose out of his employment. (Final Joint Pre-Trial Statement, ¶ I.B., hereafter "JPTS")

Plaintiff thereafter made a claim with North Carolina's worker's compensation carrier, Westchester Fire Insurance Company ("Westchester"). To date he has received the following amounts therefrom: $9,302.30 medical expense reimbursement; $9,176.00 wage loss compensation (covering the period from 2/23/75, the day after the injury, to 7/24/76, the day Westchester stopped making payments); and, on 2/14/78, a $10,000 redemption of all past, present and future wage and medical claims (JPTS ¶ I.C.). In addition, at some time during 1976, Travelers Insurance Company ("Travelers"), the Defendant herein, paid $3,652.50 to Plaintiff as reimbursement for medical expenses. (JPTS ¶ I.F.)

Plaintiff now sues Travelers for personal protection insurance benefits ("PPI" benefits) pursuant to M.C.L.A. §§ 500.3105 & 500.3107. Specifically, he claims wage benefits in the amount of $9,516.12. This amount was calculated by discounting his average weekly wage before the accident, $200.00, by 15% to obtain $170.00, M.C.L.A. § 500.3107. This amount was then multiplied by the number of weeks between January 25, 1977 and February 22, 1978.[1] M.C.L.A. § 500.3107(b). Note that Plaintiff does not claim from Travelers the full three years lost wage benefits to which he is entitled under § 500.3107(b), but rather seeks only a little in excess of one year's worth of benefits. This is because under M.C.L.A. § 500.3145(1) as applied to the facts of this case, an action to collect PPI benefits can only recover benefits which become due within one year of the commencement of the action. (Defendant's Motion for Summary Judgment, ¶ 8). Although in his complaint Plaintiff alleges that Travelers issued a policy of no-fault

---

1. It seems that there should be 56 weeks in this period. However, the parties have used the figure "55.9," which I do not disturb.

insurance to him, and that this suit is based on that policy (Complaint, ¶ 3), this is not the case; Travelers was assigned this claim pursuant to the Michigan Assigned Claims Facility, M.C.L.A. § 500.3171, because the vehicle Plaintiff was driving at the time of his injury was not insured. (JPTS ¶ I.D.)

In addition to wage benefits, Plaintiff seeks unpaid medical expenses, damages for emotional distress, and attorney's fees.[2] However, from Plaintiff's response to the pending motion for summary judgment by Defendant and from oral arguments, it appears that there are no currently pending claims for medical expenses.

### Defendant's Motion

Travelers moves for summary judgment, arguing that it is entitled to offset against the liability claimed the entire amount Westchester paid to Plaintiff, thus cancelling the entire amount of Travelers' debt. This argument is premised on M.C.L.A. § 500.3109, which provides in subsection (1):

> Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury.

### Discussion

■ The first question presented is whether Travelers should be treated as if it actually were the insurer of the vehicle in which Plaintiff was injured. Although this is listed as a "Contested Fact" in the JPTS (¶ II.A.)[3], at the hearing both parties seemed to agree that it should be. I believe this conclusion is sound, based in part on the fact that under M.C.L.A. § 500.3172 a claim against the Assigned Claim Facility is treated much the same as one against an insurer.

■ The next question is whether the Defendant's offset argument is legally

sound. Defendant contends that the worker's compensation payments came within the meaning of the "[b]enefits . . . required to be provided under the laws of any state" language in § 3109(1). Plaintiff disagrees. (Plaintiff's Brief at p. 4) I conclude Defendant is correct.

First, under M.C.L.A. § 418.611, every employer subject to the provisions of the worker's compensation act ". . . shall secure the payment of compensation under this act . . ." Second, a number of cases either expressly or by implication hold that compensation is covered by § 3109. In *Ottenwess v. Hawkeye Insurance Co.,* 84 Mich.App. 292, 300, 269 N.W.2d 570, 574, *lv. to appeal granted on other grounds,* 403 Mich. 852 (1978), the court said "[c]ertainly legislative history indicates that among the deductions from benefits required by subsection 3109(1) is worker's compensation benefits." *Cf. Lindsey v. Hartford Accident & Indemnity Co.,* 90 Mich.App. 668, 282 N.W.2d 440 (1979); *Lewis v. Yellow Freight,* 89 Mich.App. 66, 279 N.W.2d 327 (1979); *Hubert v. Citizens Insurance Co.,* 88 Mich.App. 710, 279 N.W.2d 48 (1979); *Hawkins v. Auto-Owners Insurance Co.,* 83 Mich. App. 225, 268 N.W.2d 534 *lv. to appeal granted* 403 Mich. 852 (1978); *Pollack v. Frankenmuth Mutual,* 79 Mich.App. 218, 261 N.W.2d 554 (1977).

■ The next question is whether § 3109(1) is constitutional. The parties agree that it is, notwithstanding the *Pollack* case which holds it is not. Direct support for § 3109(1)'s constitutionality is found in *Lindsey, supra,* and *Hubert, supra.* Indirect support may be gathered from *O'Donnell v. State Farm Mutual Automobile Ins. Co.,* 404 Mich. 524, 273 N.W.2d 829 (1979).

Having resolved the preliminary questions in Defendant's favor, the principal issue in this case is presented: how should the offset mandated by § 3109 be accom-

---

**2.** In ¶ VI of the JPTS, a claim is made for statutory interest in the amount of $1,879.45. The complaint does not mention statutory interest, and should be amended if interest is sought.

**3.** This is not a factual issue, but a legal one.

plished? Travelers offers several theories,[4] none of which I find entirely satisfactory.

■■■ First, the law is clear that worker's compensation payments should only be offset to the extent that they are *duplicative* of the PPI benefits sought. This is illustrated by the *O'Donnell* case wherein the Michigan Supreme Court considered an offset of federal social security survivors' benefits against the PPI survivors' benefits provided in § 3108. 404 Mich. at 544–546 & 568–569 n. 13, 273 N.W.2d 829 (dissenting opinion of Williams, J.) It is clear that for the offset to apply, the benefits must duplicate, i. e., be the same kind of benefits as, the PPI benefits being sought. Thus, no offset against Plaintiff's claimed wage loss may be made for any medical payments by Westchester.

■ Second, wage loss benefits paid by Westchester for the period 2/23/75 to 7/25/76 may not be offset against the Plaintiff's claim. This is because for benefits to be "duplicative", they must not only pertain to the same element of loss, but also to the same *time period* of loss. Wage loss benefits paid for 1975 and 1976 do not "duplicate" wage loss benefits claimed for 1977 and 1978. To hold otherwise would not only prevent double recovery but potentially half the Plaintiff's recovery. For example, if 18 months of benefits were paid by the compensation carrier, whereupon payment was stopped, the no-fault carrier could offset the first 18 months paid against the last 18 months due, entirely defeating the Plaintiff's recovery of one-half of the total to which he is entitled.[5]

The upshot of the foregoing determinations is, that of the $28,478.30 paid by Westchester, $18,478.30—$9,302.30 (1975–1976 wage loss compensation) plus $9,176.00 (medical compensation)—cannot be offset against the amounts claimed by Plaintiff. The dispositive question under Travelers' approach thus becomes how to handle the $10,000.00 redemption payment.

■ However, before proceeding with that inquiry, a preliminary matter must be addressed. Because I find it dispositive, I do not actually address the redemption issue. Section 3109(1) states that PPI benefits should be reduced by the amount of "benefits provided *or required to be provided.*" (emphasis supplied). In this case, the amount of benefits "required" to be provided is $7,112, that being 56 weeks of worker's compensation wage loss benefits. The actual amount "provided" was some as yet undetermined portion of the $10,000.00 redemption. Thus, the question is which of these two amounts is to be offset. I conclude that it is the amount required to be paid which should be offset rather than the undetermined portion of the $10,000 actually paid. This conclusion is appropriate for several reasons. First, to hold that only benefits paid should be offset would present problems in cases wherein suit was instituted against the no-fault carrier before the expiration of the full three-year period for which it is liable under M.C.L.A. § 500.-3107(b). Otherwise, the carrier would not be able to deduct payments it knew the compensation carrier would eventually pay, even though such benefits were "required".[6] Second, if only benefits actually paid could be offset, it would allow the Plaintiff to elect who, as between the no-fault and compensation carriers, to collect benefits from.

---

**4.** Travelers suggests: (1) offset the entire amount paid by Westchester, $28,478.30, against the $9,516.12 (exclusive of costs and interest) claimed by Plaintiff; (2) offset the sum of the $3,652.50 medical loss payment plus the $10,000.00 redemption against the $9,516.12 Plaintiff claims; (3) offset the sum of $7,112.00 (which would have been due from Westchester for the period 1/25/77–2/22/78 if Westchester had not redeemed the claim) plus the $3,652.50 medical loss payment against Plaintiff's $9,516.12 claim.

**5.** Assuming, of course, that worker's compensation and wage loss PPI are due at the same rate.

**6.** At least one case has implicitly allowed an offset for worker's compensation benefits which were not only unpaid but unclaimed. *Pollack, supra.*

This would disturb the legislatively established relative spheres of application of no-fault and compensation. Section 3109(1) clearly contemplates that the no-fault carrier should be liable only for the excess of its coverage over and above that potentially provided by the compensation carrier. Third, it can fairly be said in the case of a redemption that the claimant has received an amount which is functionally equal to the maximum recoverable from the compensation carrier. To the extent that amount is numerically smaller than the total potential recovery, it is simply a reflection of the questionableness of the Plaintiff's entitlement to the maximum recovery from the compensation carrier. Because the aim of no-fault was to lower insurance premiums, it would be counter-productive to allow an injured person to recover from the no-fault carrier benefits to which he has already surrendered all claim.[7]

Thus, if Plaintiff is able to establish that factually, he is entitled to the excess that Travelers' coverage provides over the amount Westchester would have paid from 1/25/77 to 2/22/78, he should recover that amount. Plaintiff has not foregone his right to that "excess" nor, even if Westchester had paid 56 weekly installments of $127.00, would Travelers be allowed to offset more than that.[8] This amount is $2,408.00, which is the sum of 56 weekly payments of $43.00, the difference between the $170.00 weekly PPI wage loss payment and the $127.00 that Westchester would have paid each week.

■ Travelers maintains that the $3,652.50 medical payment should be offset against Plaintiff's claim. I have already held that this may not be done under § 3109. Insofar as Travelers still desires to collect that amount from Plaintiff, it seems that a separate lawsuit or counterclaim would be the appropriate method by which to do so. Viewed in that light, the claim is not part of this lawsuit.

*Conclusion*

Travelers' motion for summary judgment is granted insofar as it seeks to establish an offset of some portion of the compensation benefits paid by Westchester. It is denied insofar as it seeks to establish the total absence of any right to recovery by Plaintiff. Pursuant to Rule 56(d) of the F.R.C.P., I make the following findings concerning the legal issues that are yet to be determined:

(1) Is Plaintiff entitled to interest pursuant to M.C.L.A. § 500.3142(2); if so, in what amount?

(2) Is Plaintiff entitled to an attorney's fee pursuant to M.C.L.A. § 500.-3148(1); if so, in what amount?

(3) Is Plaintiff entitled to exemplary damages under Michigan law? *Kewin v. Massachusetts Life Ins. Co.*, 79 Mich.App. 639, 263 N.W.2d 258 (1977).

The following issues, as designated in the JPTS, have been resolved by this opinion: ¶¶ II.A.; II.C.; III.8.; III.C.; III.F. The issues numbered III.D. and III.E. have been neither briefed nor argued. Issues II.B. and III.A. are moot because Travelers has withdrawn its claim in respect to them.

I make no finding as to what issues of fact pertaining to the processing and filing of Plaintiff's claim remain, nor do I make any determination as to Plaintiff's eligibility, from a factual standpoint, for benefits.

---

**7.** A fourth reason to decide the question this way is the parties' conceded inability to do more than speculate on a method to apportion the $10,000.00 redemption.

**8.** As to the interest due under M.C.L.A. § 500.-3142, Plaintiff will be required to show that he has complied with the requirements of sub-section (2) if he is to prevail.