## DIVITO v TRANSAMERICA CORPORATION OF AMERICA

Docket No. 74662. Submitted November 19, 1984, at Detroit.—Decided February 20, 1985. Leave to appeal applied for.

Joseph Divito was injured in an automobile accident in the course of his employment. Defendant, Transamerica Corporation, provides both workers' compensation and no-fault insurance to Divito's employer. Defendant initially paid workers' compensation wage-loss benefits to plaintiff and ultimately plaintiff's workers' compensation claim was redeemed for a total of $9,426.50. Plaintiff then brought the instant action seeking no-fault benefits. The Macomb Circuit Court, Kenneth N. Sanborn, J., granted defendant's motion to offset any judgment by the amount of the redemption agreement. The court denied defendant's motion to reduce any judgment for no-fault wage-loss benefits by the amount of wage-loss benefits that plaintiff could have received had he successfully pursued his workers' compensation claim. The jury awarded plaintiff no-fault wage-loss benefits, and the trial court also ordered defendant to pay plaintiff's medical expenses. Defendant appealed and plaintiff cross-appealed, alleging error in the trial court's curtailment of argument regarding an alternative theory of liability. *Held:*

1. Where a redemption agreement is entered into in good faith, the amount of workers' compensation benefits "required to be provided", for purposes of the no-fault act, is, at most, the amount received by the plaintiff under the redemption agreement. Therefore, the trial court did not err in denying defendant's motion to subtract workers' compensation wage-loss benefits which plaintiff might have received had he pursued his claim rather than entering into the redemption agreement.

2. The workers' compensation redemption agreement did not

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 7 Am Jur 2d, Automobile Insurance § 340.

Validity and construction of no-fault insurance plans providing for reduction of benefits otherwise payable by amounts receivable from independent collateral sources. 10 ALR4th 996.

Insured's receipt of or right to workmen's compensation benefits as affecting recovery under accident, hospital, or medical expense policy. 40 ALR3d 1012.

[2, 3] 7 Am Jur 2d, Automobile Insurance § 368.

bar plaintiff's claim for medical expenses under the no-fault act.

3. Plaintiff was allowed to present testimony on an alternative theory of liability which had not been pled in his complaint, but was not allowed to argue that theory in closing argument. The trial court did not err by so precluding plaintiff's argument, and the defendant has failed to prove that it was prejudiced by the jury's having heard the testimony.

Affirmed.

1. INSURANCE — NO-FAULT INSURANCE.

The primary objective of the no-fault automobile insurance act is to provide assured, adequate and prompt recovery for certain economic losses arising from motor vehicle accidents.

2. INSURANCE — NO-FAULT INSURANCE — WORKERS' COMPENSATION — SETOFF.

The amount "required to be provided" under the Worker's Disability Compensation Act and thus available to a no-fault insurer as a setoff against personal protection insurance benefits payable for the same injury, where a person is injured in a motor vehicle accident while in the course of his employment, is, at most, the amount received by the injured person where he has entered into a redemption agreement in good faith (MCL 500.3109[1]; MSA 24.13109[1]).

3. INSURANCE — NO-FAULT INSURANCE — WORKERS' COMPENSATION.

A workers' compensation redemption agreement does not bar an injured plaintiff's claim for medical expenses under the no-fault automobile insurance act where the injury is compensable under both the no-fault act and the workers' compensation act.

*Paul A. Wright,* for plaintiff.

*Hibbs, Welch & MacAlpine, P.C.* (by *Terry S. Welch),* for defendant.

Before: T. M. BURNS, P.J., and SHEPHERD and M. WARSHAWSKY,* JJ.

PER CURIAM. While delivering supplies for his employer, plaintiff was involved in an automobile accident. Defendant provides both no-fault and

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

workers' compensation coverage for the plaintiff's employer. Plaintiff filed claims for workers' compensation and no-fault benefits. Pursuant to plaintiff's workers' compensation claim, defendant voluntarily paid wage-loss benefits for a 12-week period. Defendant then ceased paying workers' compensation benefits based on a medical opinion from its consulting physician which indicated that plaintiff could return to work. Plaintiff then filed a petition for workers' compensation benefits against defendant. This claim was eventually redeemed for the total sum of $9,426.50.

Plaintiff then brought this suit to recover no-fault benefits. Prior to trial, defendant filed two motions for summary judgment. The first motion prayed that the trial court offset any judgment for no-fault benefits by the $9,426.50 workers' compensation redemption agreement. The trial court granted this motion. The second motion prayed that the trial court order any judgment for no-fault benefits to be reduced by the sum of $119 per week workers' compensation wage-loss benefits that plaintiff could have received had he further pursued his workers' compensation claim and been successful. This would have limited plaintiff's recovery to $8.50 per week since the no-fault wage-loss benefit available to plaintiff was $127.50 per week with a three-year limitation. The trial court denied this motion. The jury then returned a verdict for plaintiff for no-fault wage-loss benefits of $127.50 per week for the statutory three-year period. Defendant appeals as of right.

Defendant argues that the trial court erred in denying its second motion for summary judgment and thereby limiting the amount defendant could set off from the jury verdict to the amount of the workers' compensation redemption agreement. Defendant argues that it should be allowed to set off

the amount of workers' compensation benefits plaintiff would have received had he successfully pursued his workers' compensation claim. No-fault insurers are allowed to set off "[b]enefits provided or required to be provided under the laws of any state or the federal government" which are payable for the same injury. MCL 500.3109(1); MSA 24.13109(1). In *Thacker v DAIIE,* 114 Mich App 374; 319 NW2d 349 (1982), *lv den* 419 Mich 875 (1984), this Court attempted to define "benefits required by law":

"The plain meaning of 'require' (as shown in *Webster's New World Dictionary)* is 'to ask or insist upon, as by right or authority; demand'. Applying that language literally to this case would lead us to conclude that the workers' compensation benefits 'required by the laws of the state * * *' are those which the compensation provided would have to pay. Or, stated another way, those benefits which the plaintiff had the right to insist upon. That amount is clearly the sum which plaintiff could have received, had he elected to take his periodic benefits for the entire time he was entitled to them. Any lesser amount would not fit the definition." 114 Mich App 378.[1]

*Thacker* was followed by another panel of this Court in *James v Allstate Ins Co,* 137 Mich App 222; 358 NW2d 1 (1984).[2] In *Perez v State Farm Mutual Automobile Ins Co,* 418 Mich 634; 344 NW2d 773 (1984), three justices in dicta found that:

"By declaring that workers' compensation payments 'provided or required to be provided' are to be sub-

---

[1] The *Thacker* Court relies on the first definition of "require" as found in *Webster's New World Dictionary.* That dictionary also defines "require" as "to demand by virtue of law, regulation, etc." [What is *required* by law.]

[2] See also *Moore v Travelers Ins Co,* 475 F Supp 891 (ED Mich, 1979).

tracted from a no-fault recovery, the Legislature appears to have set forth a straightforward answer to the question it was addressing: an injured worker *must* pursue available workers' compensation payments because they are deductible simply by virtue of their availability. The 'required to be provided' clause does not mean that sums payable as workers' compensation that are not available to the injured worker because his employer failed to provide workers' compensation coverage are nonetheless to be subtracted from no-fault work-loss benefits.[17]

"The 'required to be provided' clause of § 3109(1) means that the injured person is obliged to use reasonable efforts to obtain payments that are available from a workers' compensation insurer.[18] If workers' compensation payments are available to him, he does not have a choice of seeking workers' compensation or no-fault benefits; the no-fault insurer is entitled to subtract the available workers' compensation payments even if they are not in fact paid because of the failure of the injured person to use reasonable efforts to obtain them.

---

[17] Several of the cases discussed by the parties in their briefs are not pertinent where workers' compensation payments are unavailable to the injured worker because the employer failed to provide workers' compensation coverage. In *Thacker v DAIIE,* 114 Mich App 374; 319 NW2d 349 (1982), *Moore v Travelers Ins Co,* 475 F Supp 891 (ED Mich, 1979), and *Luth v DAIIE,* 113 Mich App 289; 317 NW2d 867 (1982), workers' compensation payments were available to the injured worker although they were not actually paid to him. In *Thacker* and *Moore,* the injured workers redeemed their workers' compensation claims for less than the total amount of available workers' compensation payments they would otherwise have received; in *Luth,* an injured federal employee elected, pursuant to the federal workers' compensation statute, 5 USC 8118(c), to utilize the sick and vacation days he had accumulated rather than to apply for available federal workers' compensation payments.

[18] This construction of the 'required to be provided' clause of § 3109(1) is consistent with a common definition of the word 'require'. One panel of the Michigan Court of Appeals, in construing § 3109(1) has said that 'the plain meaning of "require" (as shown in *Webster's New World Dictionary)* is "to ask or insist upon, as by right or authority; demand" '. *Thacker v DAIIE, supra,* p 378.

"Consistent with this definition, the 'required to be provided' clause of § 3109(1) means that Perez and Lopez must 'ask, demand, or call' for any workers' compensation payments that are available to them. If, however, those payments are unavailable to Perez and Lopez because their employer failed to provide workers' compensation cover-

age, this provision does not mandate that they nonetheless be sub-tracted from no-fault work loss benefits." 418 Mich 645-646.

Most recently, this Court in *Gregory v Trans-america Ins Co,* 139 Mich App 327; 362 NW2d 268 (1984), expressly disagreed with *Thacker* and found that the no-fault insurer could only set off the amount received in the workers' compensation redemption agreement. This Court in *Gregory* first reasoned that *Thacker* relied on *Perez v State Farm Mutual Automobile Ins Co,* 105 Mich App 202; 306 NW2d 451 (1981), which was reversed in *Perez,* 418 Mich 634. The Court in *Gregory* also found that the plaintiff in that case used reason-able efforts to obtain workers' compensation bene-fits because the redemption procedure is autho-rized and governed by a statute, and a redemption must be approved by the hearing referee before it becomes effective. MCL 418.835; MSA 17.237(835), MCL 418.836; MSA 17.237(836).[3] Finally, the Court in *Gregory* disagreed with the *Thacker* analysis on policy grounds. Under *Thacker,* the circuit court in evaluating the claimant's no-fault claim would have to determine the amount of benefits payable to the claimant under the workers' compensation act, thereby invading the exclusive jurisdiction of the Bureau of Workers' Compensation. This Court also noted that the application of *Thacker* would curtail the use of redemptions in work-related auto accidents since the claimant would be required to fully pursue his workers' compensation claim so that he could receive the full amount of benefits due. This could result in lengthy delays. The pri-mary objective of the no-fault act was to provide assured, adequate and prompt recovery for certain economic losses arising from motor vehicle acci-

---

[3] See also *Thacker v DAIIE,* 114 Mich App 374, 379; 319 NW2d 349 (1982) (KAUFMAN, J., dissenting).

dents. *Miller v State Farm Mutual Automobile Ins Co,* 410 Mich 538; 302 NW2d 537 (1981). The Court in *Thacker* ignored this primary objective of the no-fault act and instead relied upon the complementary legislative objective which is the containment of the premium costs of no-fault insurance. *O'Donnell v State Farm Mutual Automobile Ins Co,* 404 Mich 524; 273 NW2d 829 (1979).

Considering both of these objectives, we agree with this Court's conclusion in *Gregory, supra,* p 332, that:

> "[W]here a redemption agreement is entered into in good faith, the amount 'required to be provided' under the [Worker's Disability Compensation Act] is, at most, the amount received by plaintiff under the redemption agreement."

This Court's finding in *Thacker,* that the insurer can set off the sum which plaintiff could have received had he elected to take his periodic benefits for the entire time he was entitled to them, is not applicable to this case. In this case, defendant voluntarily paid workers' compensation benefits for a short period and then ceased the payments. Defendant sought the opinion of a medical doctor which indicated that plaintiff was no longer disabled. Plaintiff then filed a petition with the Workers' Compensation Bureau insisting upon the full benefits he was entitled to under the act. The amount plaintiff "could have received" is clearly in question. Defendant's workers' compensation division could have been successful and plaintiff would not have received any workers' compensation benefits. If that had occurred, defendant's no-fault division would have had to pay the full jury verdict since it would not have been entitled to any setoff. The no-fault division may well have

benefitted from this redemption. Both objectives of the no-fault act are therefore advanced by limiting the setoff to the amount of the workers' compensation redemption. The no-fault insurer is allowed to set off a reasonable sum and the claimant receives prompt and adequate benefits.

At the conclusion of the trial, the court ordered defendant to pay plaintiff's medical expenses. Defendant argues that the workers' compensation redemption agreement waives plaintiff's right to receive future medical benefits under the no-fault insurance act. This Court stated in *Stimson v Michigan Bell Telephone Co,* 77 Mich App 361, 364, n 2; 258 NW2d 227 (1977), that voluntary compromises which are made at redemption hearings are final settlements of an employer's liability under the Worker's Disability Compensation Act. It is clear, however, that plaintiff claimed payment for medical expenses under the no-fault act. The redemption agreement therefore did not bar plaintiff's claim. The facts show that the medical tests and treatment were reasonably necessary to insure a proper diagnosis. The trial court could properly determine that these expenses were reasonable.

Defendant finally argues that the trial court erred in allowing plaintiff to present evidence regarding an alternative cause of action under the authority of *Nawrocki v Hawkeye Security Ins Co,* 83 Mich App 135; 268 NW2d 317 (1978). Under *Nawrocki* a plaintiff may be able to continue to receive no-fault wage-loss benefits if he can show that, even though he is no longer disabled, his job with his employer is no longer available for him to return to and the loss is a direct consequence of the disability. Plaintiff did not plead this theory of liability in his complaint. Defendant filed a motion *in limine* to preclude any motion based upon this theory of liability. The trial court denied defen-

dant's motion and plaintiff elicited testimony regarding this theory of liability. Plaintiff never amended his complaint to include this theory and defendant moved for a directed verdict at the close of proofs. The trial court ruled that plaintiff could not mention this theory in his closing argument. During its deliberation, the jury asked if they could rehear some of the testimony regarding this theory of liability. The trial court declined to instruct the jury to disregard any of the testimony relevant to the *Nawrocki* decision.

Plaintiff was properly allowed to present alternative claims of liability. The trial court also properly ruled that plaintiff could no longer argue liability under *Nawrocki.* Considering that the *Nawrocki* theory of liability was never explained to the jury, we find that defendant was not prejudiced by the admission of this testimony. The jury's request to rehear this testimony does not show any prejudice as defendant claims. There is no indication that the jury based its verdict on the *Nawrocki* theory of liability. In fact, it is more probable that the jury asked to rehear this testimony since the *Nawrocki* theory of liability was not explained in closing argument, making the reason for placing this testimony in evidence somewhat confusing. Defendant has failed to prove that it was prejudiced by the jury's having heard this evidence.

Affirmed.