GREGORY v TRANSAMERICA INSURANCE COMPANY

Docket No. 75490. Submitted on December 19, 1985 (Calendar No. 9). Decided August 7, 1986.

Russell G. Gregory was injured in an automobile accident during the course of his employment and received workers' compensation and no-fault benefits. Following a discontinuation of workers' compensation benefits resulting from a dispute with regard to his disability, the plaintiff entered into a redemption agreement with the workers' compensation provider, with $12,000 allocated to past, present, and future medical expenses and $500 to wage loss. The plaintiff thereafter demanded that Transamerica Insurance Company, his employer's no-fault insurer, pay full personal protection benefits for lost wages, minus the $500 allocated to wage loss, retroactive to the discontinuance of workers' compensation payments, with no further offset of workers' compensation. Transamerica refused. The plaintiff then brought an action in the Wayne Circuit Court against Transamerica, seeking an order to show cause why the benefits should not be paid. The court, Theodore R. Bohn, J., ordered the defendant to pay full wage loss benefits, allowing offset only of the $500 allocated to wage loss in the redemption agreement. The Court of Appeals, ALLEN, P.J., and WAHLS and WARSHAWSKY, JJ., affirmed, and certified conflict with a prior decision of another panel (Docket No. 72708). The defendant appeals.

In an opinion by Chief Justice WILLIAMS, joined by Justices BRICKLEY, BOYLE, and RILEY, the Supreme Court held:

A redemption agreement with a workers' compensation carrier operates as a bar to further claims by a claimant against any insurer for primary wage loss benefits. The no-fault insurer remains liable for all claims which are in excess of the benefits

REFERENCES

Am Jur 2d, Automobile Insurance §§ 340 et seq.

Validity and construction of no-fault insurance plans providing for reduction of benefits otherwise payable by amounts receivable from independent collateral sources. 10 ALR4th 996.

Insured's receipt of or right to workmen's compensation benefits as affecting recovery under accident, hospital, or medical expense policy. 40 ALR3 d 1012.

available from the workers' compensation carrier and which are covered by the no-fault statute.

1. Both the workers' compensation act and the no-fault act provide for benefits for loss of wage because of an inability to work following an accident. The no-fault act additionally provides that a no-fault insurer must subtract from no-fault benefits other benefits required by law to be paid for the same injury, reflecting a determination that the workers' compensation system be the primary insurer where disabilities arise from an automobile accident in the course of employment, and thus maintaining lower insurance rates through elimination of redundant recovery.

2. The amount to be offset by the no-fault insurer is the amount required to be paid under workers' compensation, rather than a redemption amount. Any other result would permit a claimant to elect between insurers, undermining the legislative intent to keep no-fault premiums low and eliminate double recovery. The no-fault carrier is liable only for the excess of its coverage over and above that potentially provided under workers' compensation.

3. Workers injured in the course of employment in automobile accidents or in some other manner may redeem their claims against the workers' compensation carrier and thereby give up their rights to future benefits. All workers injured in the course of employment should have the same incentives to maximize their recovery from the primary insurer—the workers' compensation carrier. A worker who could bargain for a settlement with a workers' compensation carrier and then renew a claim for primary benefits against the secondary insurer would have no such incentive.

Reversed.

Justice CAVANAGH, joined by Justice LEVIN, dissenting, stated that, where there is a legitimate dispute between an injured employee and a workers' compensation carrier as to liability, and the parties in good faith enter into a redemption agreement to resolve the dispute, only the amount of workers' compensation benefits actually provided or required to be provided under the terms of a fair and reasonable agreement ordinarily should be set off by a no-fault insurer.

Justice ARCHER took no part in the decision of this case.

139 Mich App 327; 362 NW2d 268 (1984) reversed.

OPINION OF THE COURT

1. INSURANCE — NO-FAULT — WORKERS' COMPENSATION — WAGE LOSS BENEFITS.

A redemption agreement between a worker injured in an automo-

bile accident in the course of employment and a workers' compensation carrier operates as a bar to further claims by the worker against a no-fault insurer for primary wage loss benefits; the no-fault insurer remains liable for all claims which are in excess of the benefits available from the workers' compensation carrier and which are provided under the no-fault statute (MCL 418.301, 418.351[1], 500.3107[b], 500.3109[1]; MSA 17.237[301], 17.237[351][1], 24.13107[b], 24.13109[1]).

2. INSURANCE — NO-FAULT — WORKERS' COMPENSATION — SETOFF.

The amount of workers' compensation benefits which must be subtracted by a no-fault insurer from personal protection insurance benefits otherwise payable to a worker injured in an automobile accident in the course of employment is the amount of workers' compensation potentially required to be paid under the workers' compensation act; entry by the worker into a redemption agreement with the workers' compensation carrier which results in the relinquishing of rights to future payment and, thus, a reduction in potential recovery does not affect the amount required to be offset by the no-fault insurer (MCL 418.301, 418.351[1], 500.3107[b], 500.3109[1]; MSA 17.237[301], 17.237[351][1], 24.13107[b], 24.13109[1]).

DISSENTING OPINION BY CAVANAGH, J.

3. INSURANCE — NO-FAULT — WORKERS' COMPENSATION — SETOFF.

*Where there is a legitimate dispute between an injured employee and a workers' compensation carrier as to liability, and the parties in good faith enter into a redemption agreement to resolve the dispute, only the amount of workers' compensation benefits actually provided or required to be provided under the terms of a fair and reasonable agreement ordinarily should be set off by a no-fault insurer (MCL 500.3109[1]; MSA 24.13109[1]).*

*Joseph C. Costanzo* for the plaintiff.

*Tyler & Thayer, P.C.* (by *Michael J. Walter*), for the defendant.

WILLIAMS, C.J. This case involves the applicability of MCL 500.3109(1); MSA 24.13109(1), the offset provision of the no-fault insurance act, to a redemption agreement of a workers' compensation claim. The specific question is whether the amount

of the redemption or the amount of the full workers' disability benefits for the full period of disability, as if there had been no redemption, shall be subtracted from the amount of the no-fault benefits. We hold that the latter amount is the proper subtraction and that such an agreement of redemption precludes the plaintiff from recovering from the no-fault insurer any amount for which the workers' compensation carrier was primarily liable. Because we hold for the defendant on the merits, we express no opinion on the defendant's objection to the procedure by which the plaintiff was awarded benefits in the trial court. The decision of the Court of Appeals is reversed.

## I. FACTS

On October 7, 1980, the plaintiff was involved in an automobile accident while working for Wayne County. He received workers' compensation benefits from October 27, 1980, until May 3, 1981, at which time disability was disputed and payments were discontinued. In addition, plaintiff received from the defendant no-fault insurer no-fault personal protection insurance benefits which were in excess of the workers' compensation benefits for wage loss beginning on October 27, 1980. After May 3, 1981, the no-fault insurer continued to pay the same excess amount to the plaintiff, despite the fact that he was no longer receiving workers' compensation benefits. This excess amount is not in issue in this case.

As to the workers' compensation claim not paid since May 3, 1981, on April 20, 1982, the plaintiff settled with the workers' compensation provider by agreeing to a $12,500 redemption of his claim. The redemption agreement provided that $12,000 of the total was allocated to past, present, and

future medical expenses, and $500 to wage loss. Plaintiff then demanded full personal protection benefits for lost wages, minus the $500 allocated to wage loss in the redemption agreement, from defendant, retroactive to May 4, 1981, when workers' compensation payments were stopped.

A hearing was conducted on August 20, 1982, in response to plaintiff's request for an order to show cause why full personal protection benefits should not be paid by the defendant. At the conclusion of the hearing, the circuit court ruled that only the $500 allocated to wage loss in the redemption agreement could be offset by the no-fault insurer from the wage loss benefits payable under the no-fault act. Defendant was therefore ordered to pay full wage loss benefits, minus the $500, from the date of the termination of workers' compensation benefits.

Defendant filed a motion for rehearing, challenging the lower court's decision and objecting to the procedure by which the order was issued. This motion was denied. On December 3, 1984, the Court of Appeals affirmed the lower court's decision on the merits, but did not consider defendant's procedural objection. *Gregory v Transamerica Ins Co,* 139 Mich App 327; 362 NW2d 268 (1984). The Court of Appeals then certified, by an order dated December 3, 1984, that its decision in *Gregory* allowing plaintiff to receive benefits from the no-fault insurer without subtraction of the full workers' compensation benefits that would have been paid but for the redemption, on the one hand, was in conflict with the decision in *Thacker v DAIIE,* 114 Mich App 374; 319 NW2d 349 (1982), requiring such subtraction, on the other hand. This Court granted leave to appeal. 422 Mich 858 (1985).

## II. STATUTORY PROVISIONS

Both the workers' compensation statutes and the no-fault insurance act provide benefits for loss of wage income due to an inability to work following an accident.[1]

Of significance in this case is that the no-fault act also has an offset provision. The no-fault act provides that

[b]enefits provided *or required to be provided* un-

---

[1] Under workers' compensation:

An employee, who receives a personal injury arising out of and in the course of employment by an employer who is subject to this act at the time of the injury, shall be paid compensation as provided in this act. [MCL 418.301; MSA 17.237(301).]

While the incapacity for work resulting from a personal injury is total, the employer shall pay, or cause to be paid as provided in this section, to the injured employee a weekly compensation of 80% of the employee's after-tax average weekly wage, but not more than the maximum weekly rate of compensation, as determined under section 355. [MCL 418.351(1); MSA 17.237(351)(1).]

Similarly, the no-fault insurance act provides that personal protection insurance benefits are payable for the following:

Work loss consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he had not been injured . . . . Because the benefits received from personal protection insurance for loss of income are not taxable income, the benefits payable for such loss of income shall be reduced 15% unless the claimant presents to the insurer in support of his claim reasonable proof of a lower value of the income tax advantage in his case, in which case the lower value shall apply. The benefits payable for work loss sustained in a single 30-day period and the income earned by an injured person for work during the same period together shall not exceed $1,000.00, which maximum shall apply pro rata to any lesser period of work loss. The maximum shall be adjusted annually to reflect changes in the cost of living under rules prescribed by the commissioner but any change in the maximum shall apply only to benefits arising out of accidents occurring subsequent to the date of change in the maximum. [MCL 500.3107(b); MSA 24.13107(b).]

der the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury. [MCL 500.3109(1); MSA 24.13109(1). Emphasis added.]

### III. OPERATION OF THE OFFSET PROVISION

The plain language of § 3109 obliges the no-fault insurer to subtract from benefits payable under that statute other benefits which are required by law to be paid for the injury. In *Mathis v Interstate Motor Freight System,* 408 Mich 164, 183; 289 NW2d 708 (1980), we held that this statute applies in cases involving workers' compensation and no-fault benefits.

> The workers' compensation benefits are paid as a result of the same accident and duplicate in varying degrees the no-fault benefits otherwise due. . . . [T]his brings the workers' compensation benefits within the scope of § 3109(1). [408 Mich 187.]

The offset statute, and this Court's application of it, reflect a determination that the workers' compensation system should be the primary insurer with respect to disabilities arising from an automobile accident at work.

> The responsibility for workers' compensation benefits rests first on the employer or workers' compensation insurer, and the amount of that payment is to be deducted from the liability of the personal protection insurance carrier. [408 Mich 183.]

The decision to make the no-fault insurer only secondarily liable is premised on a belief that

[b]ecause the first-party insurance proposed by the [no-fault] act was to be compulsory, it was important that the premiums to be charged by the insurance companies be maintained as low as possible. [*O'Donnell v State Farm Mutual Automobile Ins Co,* 404 Mich 524, 547; 273 NW2d 829 (1979).]

One way to ensure lower premiums is " 'through the elimination of duplicative benefits recovery.' " 404 Mich 545 (quoting from the dissent of WILLIAMS, J.). See also *Tebo v Havlik,* 418 Mich 350, 367; 343 NW2d 181 (1984) ("In effect, the Legislature made a trade-off. Those who were required to participate in the no-fault scheme gave up the possibility of redundant recoveries, but they were intended to receive the benefit of lower insurance rates.").

### IV. DEDUCTIBILITY OF WORKERS' COMPENSATION BENEFITS IN CASES INVOLVING REDEMPTIONS

The application of the no-fault offset provision to workers' compensation redemptions appears to be a matter of first impression in this Court. However, as indicated by the Court of Appeals certification of conflict pursuant to Administrative Order No. 1984-2, there are at least two decisions on this issue in the Court of Appeals, and these two decisions reach contrary results. The decision in the Court of Appeals in the instant case is to the effect "that the amount 'provided or required to be provided to plaintiff under the WDCA [i.e., the amount to be offset] is, at most, the amount which he received pursuant to the redemption agreement." 139 Mich App 330.

The result reached in the case in conflict, *Thacker v DAIIE, supra,* and incidentally in a federal district court case, *Moore v Travelers Ins*

*Co,* 475 F Supp 891 (ED Mich, 1979), was that the no-fault insurer might set off the amount the claimant would have collected had he continued to receive periodic workers' compensation payments for the full period, not merely the actual amount received under a redemption agreement. The *Thacker* opinion was followed by another Court of Appeals panel in *James v Allstate Ins Co,* 137 Mich App 222; 358 NW2d 1 (1984), lv den 419 Mich 946 (1984).

In the instant case, the Court of Appeals panel relied to a considerable extent on this Court's opinion in *Perez v State Farm Mutual Automobile Ins Co,* 418 Mich 634; 344 NW2d 773 (1984), and the general policy favoring redemptions. 139 Mich App 330-331. In *Perez,* this Court said:

> The "required to be provided" clause of § 3109(1) means that the injured person is obliged to use reasonable efforts to obtain payments that are available from a workers' compensation insurer. If workers' compensation payments are available to him, he does not have a choice of seeking workers' compensation or no-fault benefits; the no-fault insurer is entitled to subtract the available workers' compensation payments even if they are not in fact paid because of the failure of the injured person to use reasonable efforts to obtain them. [418 Mich 645-646.]

The Court of Appeals panel in the instant case misapprehended our holding in *Perez.* This Court in *Perez* created a very narrow exception to the literal language of the setoff statute by holding that workers' compensation payments are not deductible when they *"are unavailable because the employer failed to obtain workers' compensation coverage."* (Emphasis added.) 418 Mich 650. The situation before us was explicitly discussed in *Perez.*

Several of the cases discussed by the parties in their briefs are not pertinent where workers' compensation payments are unavailable to the injured worker because the employer failed to provide workers' compensation coverage. In *Thacker v DAIIE,* 114 Mich App 374; 319 NW2d 349 (1982), *Moore v Travelers Ins Co,* 475 F Supp 891 (ED Mich, 1979), and *Luth v DAIIE,* 113 Mich App 289; 317 NW2d 867 (1982), *workers' compensation payments were available to the injured worker although they were not actually paid to him.* In *Thacker* and *Moore,* the injured workers redeemed their workers' compensation claims for less than the total amount of available workers' compensation payments they would otherwise have received; in *Luth,* an injured federal employee elected, pursuant to the federal workers' compensation statute, 5 USC 8118(c), to utilize the sick and vacation days he had accumulated rather than to apply for available federal workers' compensation payments. [Emphasis added. 418 Mich 645, n 17.]

In short, our holding in *Perez* has no direct bearing on the instant case.

The Court of Appeals panel in the instant case preferred the policy of favoring redemptions over the reliance of the *Thacker* panel (114 Mich App 377) on the reasoning in *O'Donnell v State Farm Mutual Automobile Ins Co, supra,* p 546, that with respect to the offset provision an important objective of the Legislature was "to reduce or contain the cost of no-fault insurance by eliminating some of the benefit duplication that would otherwise occur." The *Thacker* panel then pointed out that the *O'Donnell* Court thought this was particularly important where the no-fault insurance was compulsory. 114 Mich App 377. We believe the *Thacker* panel in its reliance on *O'Donnell* reaches the correct conclusion. See our discussion of *Mathis* in Part III.

We also agree with the reasoning of the court in

*Moore,* which held that under § 3109(1) "the amount required to be paid . . . should be offset" rather than the redemption amount. 475 F Supp 894. That court noted that any other result

> would allow the Plaintiff to elect who, as between the no-fault and compensation carriers, to collect benefits from. This would disturb the legislatively established relative spheres of application of no-fault and compensation. Section 3109(1) clearly contemplates that the no-fault carrier should be liable only for the excess of its coverage over and above that potentially provided by the compensation carrier. [475 F Supp 894-895.]

This result eliminates the need for judicial review of the allocation of settlement amounts and eliminates the incentive for the disabled worker and the workers' compensation carrier to apportion most of the total amount to medical expenses. Further, allowing a plaintiff to settle with the primary insurer and then to recover full wage loss benefits from the excess insurer would undermine the legislative desire to keep no-fault premiums as low as possible by eliminating double recoveries.

> [I]t would be counter-productive to allow an injured person to recover from the no-fault carrier benefits to which he has already surrendered all claim. [475 F Supp 895.]

Allowing a double recovery of this type would discriminate inappropriately between those workers injured in automobile accidents at work and those injured in some other manner while at work. Claimants in both groups can redeem their claims against the workers' compensation insurer and thereby give up their rights to future benefits from that insurer. A worker injured in an *automobile*

accident while at work also has the additional security of obtaining *excess* benefits from another insurer. However, all claimants injured at work should have the same incentives to maximize their recovery from the primary insurer. We see no reason to permit auto accident claimants to bargain for a workers' compensation settlement and then renew their claims for primary benefits against the secondary insurer, thus making a mockery of the settlement process. Of course, the no-fault insurer remains liable for any benefits due which are greater than the amounts which the workers' compensation system is required by statute to pay to disabled workers.

### CONCLUSION

For the foregoing reasons, we reverse the decisions of the circuit court and the Court of Appeals. We hold that a redemption agreement with the workers' compensation carrier operates as a bar to further claims by the plaintiff against any insurer for primary wage loss benefits. The no-fault insurer remains liable for all claims which are in excess of the benefits available from the workers' compensation carrier and which are covered by the no-fault statute.

BRICKLEY, BOYLE, and RILEY, JJ., concurred with WILLIAMS, C.J.

CAVANAGH, J. (*dissenting*). The majority holds that a no-fault insurer's liability for personal protection insurance benefits should be offset by the amount of workers' compensation benefits the injured employee would have received if he had not entered into a redemption agreement. The majority reaches this conclusion on the basis of cases which we believe are factually distinguishable. We

would hold that where there is a legitimate dispute between an injured employee and a workers' compensation carrier, and the parties in good faith enter into a redemption agreement, only the amount of workers' compensation benefits provided or required to be provided under the agreement should ordinarily be set off pursuant to § 3109(1) of the no-fault act.[1]

An employee who suffers accidental bodily injury in the course of his employment while occupying his employer's motor vehicle is entitled to collect both no-fault and workers' compensation benefits from his employer's insurers. *Mathis v Interstate Motor Freight System,* 408 Mich 164, 175; 289 NW2d 708 (1980). To prevent the employee from receiving a double recovery, § 3109(1) of the no-fault act permits the no-fault insurer to set off workers' compensation benefits "provided or required to be provided" to the employee. *Id.,* pp 186-187.[2]

Plaintiff in this case is not seeking to recover duplicate benefits from defendant no-fault insurer. He only wishes to obtain benefits for wage loss

---

[1] MCL 500.3109(1); MSA 24.13109(1) provides:

Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury.

The Workers' Disability Compensation Act provides that a payment under the act "shall not be assignable." This provision does "not apply to or affect the validity of an assignment made to an insurance company . . . ." MCL 418.821; MSA 17.237(821). It does not appear that Gregory sought to assign his claim against the workers' compensation carrier to the defendant no-fault insurer and that the no-fault insurer refused to accept such an assignment and to pay the full no-fault benefit.

[2] Setoff is only permitted where the no-fault and workers' compensation benefits serve the same purpose and are provided, or are required to be provided, as a result of the same accident. *Jarosz v DAIIE,* 418 Mich 565, 577; 345 NW2d 563 (1984).

which were not provided to him under the terms of the workers' compensation redemption agreement. There is also no question that plaintiff promptly sought reinstatement of his workers' compensation benefits. Although defendant challenges the apportionment of the settlement between medical expenses and wage loss, there is no allegation that the total amount of the settlement was unreasonably low.

The phrase "provided or required to be provided" is not so clear and unambiguous as to be susceptible of only one interpretation. *Perez v State Farm Mutual Automobile Ins Co,* 418 Mich 634, 642; 344 NW2d 773 (1984); *Davis v Auto-Owners Ins Co,* 116 Mich App 402, 413; 323 NW2d 418 (1982). The instant case and those discussed in Section IV of the majority opinion involve three distinct fact patterns. In *Perez* and *Davis,* the employer failed to obtain workers' compensation insurance. In this factual situation, the no-fault insurer cannot set off the amount of workers' compensation benefits theoretically available to the injured employee because the employee will never actually receive these benefits. Although the no-fault insurer is forced to bear the entire loss, this is preferable to denying the employee a full and adequate recovery for his injuries.

*Thacker v DAIIE,* 114 Mich App 374; 319 NW2d 349 (1982), and *James v Allstate Ins Co,* 137 Mich App 222; 358 NW2d 1 (1984), lv den 419 Mich 946 (1984), present a different fact pattern. In each case, the employer carried workers' compensation insurance, and the plaintiff employee was entitled to such benefits. The employees and the workers' compensation carriers agreed to settle the claims for lump sums. The parties stipulated that the total amount of workers' compensation benefits would have been significantly larger if the employ-

ees had elected to receive monthly benefits. The Court of Appeals, in both cases, concluded that the no-fault insurer could set off the amount of benefits the employees would have received had they not elected to receive lump sums.

That is not the situation presented here, or in *Divito v Transamerica Corp of America,* 141 Mich App 29; 366 NW2d 231 (1985). In these cases, the workers' compensation carriers maintained that the injured employees were not entitled to further benefits. Rather than litigate the matter before the Bureau of Workers' Compensation, the employees and the carriers entered into redemption agreements. The Court of Appeals, in both cases, concluded that the no-fault insurers could set off only the amount of benefits actually received by the employees under the terms of the redemption agreements.

Where there is a legitimate dispute over an employee's eligibility for workers' compensation benefits, and that dispute is voluntarily resolved through a redemption agreement, the benefits required to be provided to the employee are ordinarily those set forth in the agreement.[3] When a redemption amount is approved by a referee, the worker has discharged his obligation "to use reasonable efforts to obtain payments that are available from a workers' compensation insurer."[4] That amount becomes the amount "provided or required to be provided," unless the no-fault carrier can persuade the circuit judge that the redemption amount is not a fair and reasonable settlement of the dispute between the employee and the work-

---

[3] The redemption agreement must be approved by the Bureau of Workers' Compensation. See MCL 418.835-418.837; MSA 17.237(835)-17.237(837).

[4] *Perez v State Farm Mutual Automobile Ins Co,* 418 Mich 634, 645; 344 NW2d 773 (1984).

ers' compensation carrier.[5] In this situation, we would construe § 3109(1) as follows: If the redemption amount has been paid by the time the no-fault insurer attempts to offset its liability, the payment would constitute "benefits provided." Where the redemption amount has not yet been paid, this amount would constitute "benefits . . . required to be provided."

The majority, in contrast, concludes that the benefits "required to be provided" are those which an employee would have received but for the redemption agreement. Unlike *Thacker* and *James,* the workers' compensation carrier in this case has never admitted that it was liable for more benefits than it paid. In order to determine what an employee theoretically would have received, the courts would have to determine the merits of the underlying workers' compensation claim. The majority's interpretation would encourage employees to pursue their workers' compensation claims, rather than redeem them, in order to receive the full amount of benefits due. Such litigation would not further the primary goal of either the workers' compensation or the no-fault acts, i.e., to provide injured persons with an assured, adequate, and prompt recovery.[6]

---

[5] The circuit judge could substitute his judgment only when the evidence demonstrates that the redemption amount is less than the minimum amount within the spectrum of a fair and reasonable settlement of the dispute. If the circuit judge finds that the redemption amount is below such minimum amount, the minimum amount that the circuit court decides would be a fair and reasonable settlement is the amount "provided or required to be provided."

[6] There may be instances where a redemption agreement between an employee and a workers' compensation carrier will benefit a no-fault insurer. For example, if the Bureau of Workers' Compensation determines that the employee was not injured during the course of employment, the no-fault insurer must shoulder the entire loss. If the employee and the carrier had entered into a redemption agreement, however, the amount of the agreement would have been set off against the no-fault insurer's liability.

The majority worries that if only the amount of workers' compensation benefits actually received can be subtracted from the no-fault benefits otherwise owed, employees and workers' compensation carriers will structure their redemption agreements so as to require the no-fault insurer to pay most of the benefits. We would not be so quick to reach such a conclusion. If there is evidence that the redemption agreement is not a fair and reasonable compromise, the no-fault insurer may attack the agreement.[7] Defendant has not produced such evidence.[8]

In short, we would interpret § 3109(1) to require setoff only for the amount of benefits actually provided, or required to be provided, under the terms of a fair and reasonable workers' compensation redemption agreement, which was entered

---

[7] Even the majority's holding could be improperly manipulated. For example, an insurer who provides both workers' compensation and no-fault coverage to an employer could negotiate a low workers' compensation redemption agreement. The insurer could then claim a setoff against its no-fault liability for the amount the employee could have received if he had pursued his claim.

[8] Defendant argues that the $12,500 workers' compensation redemption was improperly apportioned between medical expenses and wage loss. The validity of the redemption agreement does not depend on the validity of the apportionment. We would hold that the defendant no-fault insurer is entitled to credit for the $12,500 against the first monies otherwise payable by it (whether for medical expense or wage loss) that, but for the redemption, would have been required to be paid by the workers' compensation carrier, until said sum of $12,500 has been exhausted.

Defendant has not alleged that plaintiff did not, or will not, incur $12,000 worth of medical expenses as a result of the motor vehicle accident. Defendant only argues that plaintiff "must" have incurred more than $500 in wage loss, in light of his extensive medical expenses.

A no-fault insurer must provide personal protection insurance benefits for both reasonable medical expenses and up to three years of wage loss. MCL 500.3107; MSA 24.13107. If more of the settlement had been apportioned to wage loss, and plaintiff had incurred $12,000 in medical expenses, plaintiff could have sought reimbursement for those medical expenses not covered by the redemption agreement. In either event, defendant's total liability would be approximately the same.

into in good faith to resolve a legitimate dispute as to workers' compensation liability. The majority's contrary conclusion encourages litigation and prevents employees, who settle their workers' compensation claims in good faith, from obtaining one full recovery.[9] We would therefore affirm the decision of the Court of Appeals.

LEVIN, J., concurred with CAVANAGH, J.

ARCHER, J., took no part in the decision of this case.

---

[9] Since it is unnecessary to the resolution of this case, we express no opinion as to the validity of the Court of Appeals decisions in *Thacker* and *James*.